**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 22 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES EDWARD NEFF,

Defendant-Appellant.

No. 01-4184

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:00-CR-408 ST)

---

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **HARTZ** , **McKAY** , and **O'BRIEN** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

---

Defendant entered a conditional guilty plea to one count of possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5861(d) and 5845, subject to his right to appeal the district court's denial of his motion to suppress. *See* Fed. R. Crim. P. 11(a)(2) (conditional pleas). On appeal he contends that the district court erred in not suppressing evidence obtained as a result of his investigative detention. In particular, he argues that it was unreasonable to handcuff him throughout the detention, the detention therefore became an arrest, and the arrest was not supported by probable cause. The government, somewhat surprisingly, does not argue that the officers had probable cause to arrest Defendant; it relies on its contention that the handcuffing was reasonable in the circumstances. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

**Facts**

At approximately 1:40 a.m. on September 2, 2000, West Valley City police detective Eric Reed, FBI special agent Juan Becerra, and two or three other detectives were gathered outside a convenience store. The neighborhood was known as a high crime area where many children live and play. A pregnant woman approached the officers and stated that she had seen an apparently intoxicated man behaving oddly on Harvey Street. She said he was carrying a gun, which she believed to be a "short type rifle," in the sleeve of his jacket. She

described the man, said his arms were stiff as he walked, and provided his home address. The witness also told the officers her own name, address, telephone number, and place of employment.

When the officers arrived at Harvey Street, they noticed a man standing on the street who fit the witness's description. The man, Defendant, saw the officers and walked away at a brisk pace in the direction of the address the witness had given. The officers followed him. As they neared his apartment, they briefly lost sight of him because a pickup truck parked on the apartment's front lawn blocked their view. Although Reed turned on his patrol car lights and asked Defendant to stop, Defendant continued walking. Other officers also unsuccessfully asked Defendant to stop. Upon arriving at the landing in front of his apartment, Defendant reached for his chest or waist. The officers drew their weapons and ordered him to stop and drop to the ground. Defendant complied.

Defendant appeared intoxicated and smelled of alcohol. Reed frisked and handcuffed him. In Defendant's jacket he felt a "hard bulge," which Reed discovered to be 16 live rounds of 20-gauge shotgun shells.

Reed informed Defendant that he was being held because of a report that he had a concealed weapon. Although the testimony of the officers conflicted as to whether Defendant initially denied having a gun, they agreed that he soon stated that the gun was in a green box in his apartment. Defendant's mother, who shared

the apartment with him, consented to a search of their apartment. The officers found the green box, but it did not contain a gun. With his mother's encouragement to tell the officers where the gun was, Defendant then said it was in the cab of the truck parked in front of the apartment, which he had walked past a few minutes earlier. In the cab of the truck Reed discovered the shotgun and observed that the barrel was shortened in length.

Defendant was advised of his *Miranda* rights, which he waived. He admitted that he knew the shortened barrel made the gun illegal to possess and that the illegality was the reason why he was able to buy the gun at a reduced price.

After being indicted for possession of an unregistered short-barreled shotgun, Defendant moved to suppress the gun and his statements to the police about the location of the gun. He claimed that (1) the investigative stop became an arrest when the officers held him at gunpoint and then handcuffed him for a prolonged period and (2) the arrest was unlawful because it was not supported by probable cause. The district court ruled that the officers' use of handcuffs was reasonable as part of a stop authorized by *Terry v. Ohio*, 392 U.S. 1 (1968).

**Discussion**

On appeal from the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's findings

-4-

of fact unless clearly erroneous. *United States v. Gama-Bastidas*, 142 F.3d 1233, 1237 (10th Cir. 1998). Here, Defendant has not challenged the district court's findings of fact. The issue on appeal is solely whether, given those facts, the officers' conduct violated the Fourth Amendment. We review this issue de novo. *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) ("The ultimate legal determination of reasonableness under the Fourth Amendment is subject to de novo review.").

In addressing the constitutionality of an investigative stop, "the inquiry is twofold. First, the officer's action must be 'justified at its inception.'" *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993) (quoting *Terry*, 392 U.S. at 20). Second, "the officer's action [must be] 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* If a police-citizen encounter exceeds the limits of a *Terry* stop, the detention becomes an arrest that must be supported by probable cause. *See Perdue*, 8 F.3d at 1462. Defendant does not contest his initial detention. He argues, however, that the police exceeded the permissible scope of an investigative *Terry* stop due to the length of the detention and the use of handcuffs. He claims that his detention therefore became an arrest.

The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule; "common sense and ordinary human experience

must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Moreover, we should not engage in "unrealistic second-guessing" of a police officer's decision. *Id.* at 686.

Thus, a *Terry* stop does not become unreasonable just because police officers use handcuffs on a subject or place him on the ground. *See Perdue*, 8 F.3d at 1463. Further, the "use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection." *Id.* at 1462 (internal quotation marks, brackets, and citation omitted). "Since police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry*] stop.'" *Id.* (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)).

Our decision in *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996), illustrates the appropriate analysis. At approximately 3:30 a.m. three vehicles traveling together were stopped for speeding. *Id.* at 1495-96. None of the drivers had a driver's license. *Id.* at 1496. The officer asked for identifying information and radioed it to a police dispatcher. *Id.* At 3:55 a.m. the dispatcher reported that one of the drivers, Smith, was wanted on a weapons charge in another state and was considered armed and dangerous. *Id.* at 1496-97. When backup arrived, the

six occupants of the three vehicles were ordered to leave the vehicles one at a time. *Id.* at 1497. After individually exiting the vehicle, each occupant was frisked, handcuffed, and told to kneel on the pavement. *Id.* During this procedure, which took about five minutes for each occupant, the officers pointed their guns at the occupant. *Id.* As each vehicle was emptied, it was inspected for further occupants. *Id.* at 1497-98. The officers then questioned the six occupants further about their possession of the vehicles. *Id.* at 1498. About 5:00 a.m. the officers learned that Smith was not in fact a wanted felon. *Id.* We held:

> The reasonable belief that the defendants posed a danger justified the procedures in this case. The officers were entitled to display their weapons, to separate defendants from their vehicles, to conduct a pat down search, and to restrain the defendants with handcuffs until the officers had completed securing all the defendants. For their own safety, the officers were entitled to remove the defendants one by one, which, because of the number of defendants, necessarily took time. We therefore conclude that although bordering on an illegal arrest, the precautionary measures of force employed by the officers were reasonable under the circumstances.

*Id.* at 1506 (quotation marks, citations, and brackets omitted). More troubling was that several of the occupants continued to be handcuffed after the officers had determined that none of the six was armed. *Id.* at 1507. We wrote:

> Although finding it a close question, we hold that, at least until 5:00 a.m. when the officers received confirmation that defendant Smith was not the individual wanted in the NCIC teletype, the use of handcuffs was reasonable. The number of suspects, the fact that the encounter took place

at night, and the reasonable suspicion that one of the suspects was a wanted felon, justified the officers in keeping the defendants in handcuffs for the officers' safety. However, once the officers learned that Smith was not the individual identified in the NCIC teletype, the continued use of handcuffs constituted an unlawful arrest.

*Id.* In short, the use of handcuffs was appropriate as long as there was a reasonable, articulable ground for fearing danger from the suspects.

By that standard, the handcuffing of Defendant was legitimate in this case. The officers had received a reliable report that Defendant was armed with a particularly dangerous weapon. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3, at 88-89 (3d ed. 1996) (noting presumptive reliability of citizen informers). When they stopped and frisked him—actions not challenged on appeal—the ammunition on his person provided solid confirmation that he had been carrying a weapon. Although he did not have a weapon on his person, the officers had temporarily lost sight of him during the pursuit, so it could have been hidden nearby. Further confirmation of the existence of a weapon came from Defendant's statement that "the" weapon was in his apartment. Even if Defendant, who was being watched by some officers outside, did not pose a risk of grabbing the gun in the apartment, the officers could be somewhat skeptical that the gun was there because they had not seen him enter the apartment during their pursuit. When the gun was not where he said it would be in the apartment, the officers had additional grounds for concern about

where he may have hidden it and whether he might be able to grab it without warning. To be sure, Defendant was outnumbered by the officers; yet the officers could reasonably believe it to be imprudent to rely on there always being someone intently watching Defendant. Distractions happen.

We believe that the facts of record provide reasonable, articulable grounds for the officers to handcuff Defendant. The officers had reason to fear someone who was reliably reported to be carrying an unlawful weapon. And given the reason to believe the weapon was on or near the suspect's person, they had a sound basis for taking stringent precautions until they recovered it. We note that the district court found that Defendant was handcuffed for only a few minutes before the gun was discovered.

Defendant cites several appellate decisions in support of his claim that his handcuffing was unreasonable. In all but one of the cases, however, the handcuffing was upheld. None of those decisions contains language indicating that the specific facts in this case would preclude handcuffing. As for the one cited case that found handcuffing unjustified, we noted that the officers "had no tips or observations that the suspects were armed or violent." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994).

Finally, Defendant contends that the handcuffing was unreasonable because there was no evidence in the record that the officers in fact feared for their safety.

In measuring the actions of a police officer under the Fourth Amendment, however, we look at the objective facts, not the officer's state of mind. *Maryland v. Macon*, 472 U.S. 463, 470 (1985).

We AFFIRM the judgment of the district court.