**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES KILGORE,

      Plaintiff-Appellant,

v.

CITY OF STROUD, OKLAHOMA, a
municipal corporation; LUCKY
MILLER; GLOVER CRITTENDEN,

      Defendants-Appellees,

  and

CITY OF DAVENPORT,
OKLAHOMA, a municipal
corporation; BILL SIDES,

      Defendants.

No. 04-6273
(D.C. No. 03-CV-1583-F)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **HENRY, ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

James Kilgore appeals from the district court's grant of summary judgment to the City of Stroud, Oklahoma, Lucky Miller, and Glover Crittenden Mr. Kilgore brought a 42 U.S.C. § 1983 claim against the individual defendants arising from his arrest on drug charges. He asserted that they had violated his Fourth Amendment right to be free from unreasonable searches and seizures. Mr. Crittenden was Stroud's chief of police and Mr. Miller was a sergeant in the police department.

Mr. Kilgore also brought state claims against the City under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-172, alleging that the City was liable for the torts of trespass upon the person, false arrest, assault, and battery committed by Officer Miller and Chief Crittenden. The district court granted summary judgment for Officer Miller and Chief Crittenden on the federal claims and, exercising pendant jurisdiction, granted summary judgment to the City on the state claims. Mr. Kilgore appeals. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. Background

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1067-68 (10th Cir. 2005). "We view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id*. at 1068 (internal quotation marks omitted).

In April of 2003, Chief Crittenden and Officer Miller had information from a confidential informant that a man named Clifford Lewis and a woman named Jamie Hulls were buying over-the-counter decongestant tablets containing pseudoephedrine from the store manager at a local convenience store. The officers also had been informed that Ms. Hulls "was manufacturing methamphetamine at her residence with [Mr.] Lewis." Aplt. App., Vol. 1, Doc. 7, Attach. A at 1. The officers knew that pseudoephedrine is a precursor ingredient for methamphetamine and that Mr. Lewis had previously been convicted of possessing methamphetamine. Officer Miller contacted the corporate offices of the convenience store and was shown a video tape of the store manager being handed twenty boxes of decongestant tablets containing pseudoephedrine by a

-3-

female customer and then placing the tablets in a sack behind the counter until the store was empty of other customers, at which time the manager rang up the sale of the tablets and the female customer departed.

Officer Miller contacted the store manager, asked her to come to the police station, and then confronted the manager with the incriminating video tape. The manager identified the woman in the video as Ms. Hulls and advised Officer Miller (1) that she had been ordering extra pseudoephedrine for Mr. Lewis and Ms. Hulls for eight weeks, (2) that either Mr. Lewis or Ms. Hulls would pick up the tablets on either Tuesdays or Thursdays, and (3) that "[Ms. Hulls] and [Mr.] Lewis were using the pseudoephedrine tablets to manufacture methamphetamine." *Id*. at 2. The store manager also advised Officer Miller (4) that there was a pick-up scheduled for that day, April 24, 2003. The manager agreed to proceed with the sale and call Officer Miller on his cell phone when the tablets were purchased.

An hour after the store manager returned to her duties, Mr. Lewis arrived, entered the store, exited with a white plastic bag, and got back in his truck. The store manager called Officer Miller, who had been covertly watching the store, and told him that Mr. Lewis had "purchased a lot of pseudoephedrine tablets." *Id*. at 3. Officer Miller immediately called Chief Crittenden, who was stationed nearby. Chief Crittenden intercepted Mr. Lewis's truck, pulling in front of it to

prevent it from leaving the store's parking lot. Officer Miller pulled his car along the passenger side of Mr. Lewis' truck. Mr. Kilgore was seated next to Mr. Lewis in the front passenger seat of the truck. Officer Miller exited his car and, as he walked behind the truck, Mr. Lewis put the truck in reverse, revved the engine and began backing up. Officer Miller jumped out of the way to avoid being run over and fired two shots into the front passenger-side tire. Mr. Lewis kept driving in reverse through the parking lot but, once he realized his tire was flat, he fled on foot. He was apprehended by Chief Crittenden a block away from the store. While Chief Crittenden drove after Mr. Lewis, Officer Miller asked Mr. Kilgore to get in the back of Officer Miller's police car so that Officer Miller could help Chief Crittenden search for Mr. Lewis. "Almost immediately, however, Chief Crittenden advised [Officer Miller] that he had located [Mr.] Lewis," and returned to the convenience store.     *Id*. at 4.

Officer Miller called for a tow truck in order to impound Mr. Lewis' truck and then searched the vehicle in order to inventory the contents and complete a stored vehicle report. Among other things, Officer Miller found a case on the passenger side floorboard containing (1) sixty unused needles and syringes, and (2) a cigar box with a used needle and syringe inside. Officer Miller also found a plastic bag containing eleven boxes of decongestant tablets in the middle of the back seat. Mr. Kilgore and Mr. Lewis were both arrested. The next day, an

Oklahoma state court judge found that probable cause existed for Mr. Kilgore's arrest and detention for possession of a precursor substance with the intent to distribute. This charge was later dismissed after Mr. Kilgore had been in jail for approximately two months.

## II. Analysis

Mr. Kilgore ask us to answer the following questions: (1) Were his Fourth Amendment and state law rights violated by the initial stop of Mr. Lewis' truck, its subsequent search, and Mr. Kilgore's arrest? (2) Were disputed questions of material fact present that would preclude summary judgment? The second of these questions is easily answered. All of the material facts before the district court were taken from the affidavits of Chief Crittenden and Officer Miller and the other documents that were attached to the defendants' motion for summary judgment. Mr. Kilgore did not dispute any of the material facts. As to the first question, we will examine Mr. Kilgore's 42 U.S.C. § 1983 claims against Chief Crittenden and Officer Miller before turning to his state law claims against the City.

### A. Fourth Amendment Claims

"Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, the people are 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no

Warrants shall issue, but upon probable cause . . . .'"  *Maryland v. Pringle*,

540 U.S. 366, 369 (2003) (quoting U.S. Const. amend. IV) (citation omitted;

alterations in original).  Under 42 U.S.C. § 1983, "[e]very person who, under

color of any statute, ordinance, regulation, custom, or usage, of any State . . .

subjects, or causes to be subjected, any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution

. . . , shall be liable to the party injured in an action at law."

> According to the Supreme Court, there are three types of
> police-citizen encounters: (1) consensual encounters which do not
> implicate the Fourth Amendment, (2) investigative detentions which
> are Fourth Amendment seizures of limited scope and duration and
> must be supported by a reasonable suspicion of criminal activity, and
> (3) arrests, the most intrusive of Fourth Amendment seizures and
> reasonable only if supported by probable cause.

*United States v. Davis*, 94 F.3d 1465, 1467-68 (10th Cir. 1996) (internal quotation

marks and citations omitted).

We must first note that neither party identifies the specific offense for

which Mr. Kilgore was arrested.  The offense was described in some accounts as

"possession of a precursor substance,"  *see, e.g.,*  Aplt. App., Vol. I, Doc. 7,

Attach. A at 5, and in others as "possession of a precursor substance with intent

to distribute,"  *see, e.g.,*  *id*., Attach. E at 1.  Under Okla. Stat. tit. 63, § 2-332(A),

"[i]t [was] unlawful for a person to knowingly and unlawfully possess a drug

product containing . . . pseudoephedrine . . . with intent to use the product as a

precursor to manufacture methamphetamine or another controlled substance."

Under Okla. Stat. tit. 63, § 2-322, it was a crime for a person to "possess, sell, manufacture, transfer, or otherwise furnish" pseudoephedrine without a permit. As discussed below, there was probable cause for Mr. Kilgore to be arrested for either offense. The exact offense the officers intended to arrest Mr. Kilgore for committing is irrelevant. "Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). "[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with or whether a person is later acquitted of the crime for which she or he was arrested." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (citation omitted); *see also Marrs v. Boles*, 51 F. Supp. 2d 1127, 1135 (D. Kan. 1998) ("If probable cause exists as to one charged crime, whether the police had probable cause to arrest for other crimes is irrelevant.").

1. **The Initial Stop of Mr. Lewis' Truck**

Mr. Kilgore argues that he was arrested when Mr. Lewis' vehicle was first stopped. We disagree. The determination of what point in time Mr. Kilgore was arrested is not dependant on either Mr. Kilgore's or the officers' beliefs regarding when an arrest occurred.

> The police conduct should be judged in terms of what was done
> rather than what the officer involved may have called it at the time.

> If an officer tells the suspect he is under arrest but then conducts only a frisk and finds a weapon, a later determination that grounds for arrest were lacking should not render inadmissible the discovered weapon if there were in fact grounds for a stop and the frisk. Obviously the result would be otherwise if the search exceeded that permissible under *Terry* [*v. Ohio*, 392 U.S. 1 (1968)].

Wayne R. LaFave et al., 2 *Criminal Procedure* § 3.8(b) (2d ed.1999) (footnote omitted); *see also United States v. Neff*, 300 F.3d 1217, 1222 (10th Cir. 2002) ("In measuring the actions of a police officer under the Fourth Amendment, . . . we look at the objective facts, not the officer's state of mind.").

When the officers first intercepted Mr. Lewis's truck, they needed only sufficient cause to make an investigative detention. "A seizure by means of an investigative detention is constitutional only if supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Davis*, 94 F.3d at 1468 (internal quotation marks omitted). "While an investigative detention does not require probable cause, it does demand something more than an inchoate and unparticularized suspicion or hunch." *Id*. (internal quotation marks omitted).

Here, the officers clearly had a "reasonable and articulable suspicion," that Mr. Lewis was engaged in criminal activity. A confidential informant provided information that Mr. Lewis and Ms. Hulls were buying over-the-counter decongestant tablets containing pseudoephedrine at a local convenience store and that Ms. Hulls was manufacturing methamphetamine at her residence with

-9-

Mr. Lewis. When confronted, the convenience store manager had admitted that she had assisted the pair by ordering extra pseudoephedrine for them for eight weeks and that Mr. Lewis and Ms. Hulls were using the pseudoephedrine to manufacture methamphetamine. The officers had also watched Mr. Lewis arrive at the convenience store, enter, and then exit with a white plastic bag, and the manager had notified Officer Miller by cell phone that Mr. Lewis had "purchased a lot of pseudoephedrine tablets." Aplt. App., Vol. 1, Doc. 7, Attach. A at 3. The officers clearly had "something more than an inchoate and unparticularized suspicion or hunch" that Mr. Lewis both possessed the pseudoephedrine tablets and intended to use them to manufacture methamphetamine.

"The government [does have] the burden of demonstrating that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996) (internal quotation marks omitted). Here, however, the only "detention" that has to be justified *solely* on the information received from the informant and the store manager was the officer's initial attempt to stop the vehicle.

Mr. Kilgore argues that it was not illegal for Mr. Lewis to purchase the decongestant tablets in the quantity he did and that the officers, therefore, could not stop Mr. Lewis's truck. First, this is not a situation where a store clerk called

the police after a stranger purchased a large amount of cold pills.  Here the store

manager had been ordering extra tablets for eight weeks *for the purpose* of

assisting Mr. Lewis and Ms. Hulls in manufacturing methamphetamine.  Second,

the legality of a particular act is not dispositive.  "[I]nnocent behavior frequently

will provide the basis for a showing of probable cause," *Illinois v. Gates*,

462 U.S. 213, 244 n.13 (1983), and, a fortiori, for a showing of reasonable

suspicion.  "[T]he relevant inquiry is not whether particular conduct is 'innocent'

or 'guilty,' but the degree of suspicion that attaches to particular types of

noncriminal acts." *Id*.; *see also United States v. Arvizu*, 534 U.S. 266, 277 (2002)

("A determination that reasonable suspicion exists, however, need not rule out the

possibility of innocent conduct.").

## 2.  The Search of Mr. Lewis's Truck

The officers' search of Mr. Lewis's truck also did not violate the Fourth

Amendment.  When the officers apprehended Mr. Lewis, they had probable cause

to arrest him, which would also require them to impound his truck.  Officer Miller

conducted an inventory search of the vehicle after he called for a tow truck to

come and get the truck for impound.  This was entirely proper.

> It is common practice for the police to conduct an inventory of the
> contents of vehicles they have taken into their custody or are about to
> impound.  Such inventories are now a well-defined exception to the
> warrant requirement of the Fourth Amendment.  They are not treated
> as investigative searches because they serve three administrative
> purposes: the protection of the owner's property while it remains in

-11-

police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger.

*United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (internal quotation marks and citations omitted).

### 3. The Arrest of Mr. Kilgore

As discussed above, after Officer Miller shot out the front tire of Mr. Lewis's truck, Mr. Lewis attempted to escape on foot. Mr. Kilgore, on the other hand, did not attempt to exit the truck. Officer Miller "asked . . . [Mr.] Kilgore . . . to get out of [Mr. Lewis's truck] and get in [Officer Miller's] vehicle, so that [Officer Miller] could assist [Chief] Crittenden in locating [Mr.] Lewis." Aplt. App., Vol. 1, Doc. 7, Attach. A at 4. It is unclear whether Mr. Kilgore was actually placed in Officer Miller's vehicle, because Chief Crittenden "[a]lmost immediately" informed Officer Miller that he had caught Mr. Lewis and was returning to the convenience store. *Id*. Mr. Lewis and Mr. Kilgore were eventually handcuffed and placed in the police car of another officer who had arrived at the scene. Mr. Kilgore maintains that he was handcuffed and placed in the police car *prior to* the officers' search of the truck and discovery of the eleven boxes of decongestant tablets and the used and unused needles and syringes.

Because Officer Miller received the phone call from the store manager telling him that Mr. Lewis had purchase pseudoephedrine at "approximately sometime after 10:00 a.m," *id*. at 3, and because Officer Miller requested a wrecker service to impound Mr. Lewis's truck and began the inventory search at "approximately 10:39 a.m," *id*. at 4, it is reasonable to assume that the most time

-13-

Mr. Kilgore spent handcuffed in the back of the police car *prior to* the search was approximately twenty to thirty minutes.

"If a police-citizen encounter exceeds the limits of a *Terry* stop, the detention becomes an arrest that must be supported by probable cause." *Neff*, 300 F.3d at 1220. "The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule; common sense and ordinary human experience must govern over rigid criteria. Moreover, we should not engage in unrealistic second-guessing of a police officer's decision." *Id*. (quotation omitted). Here the detention prior to the search of Mr. Lewis's truck was not onerous enough to exceed the limits of an investigatory detention and become an arrest.

Our decision in *Neff* is instructive. There, the police received a report that the defendant was intoxicated and was walking down the street carrying a concealed weapon. The police located the defendant and asked him to stop. The defendant ignored their request and, when he reached for his chest or waist, the police officers drew their weapons and ordered him to drop to the ground. The police frisked and handcuffed the defendant and found shotgun shells in his jacket but no shotgun. After a period of questioning, the defendant directed the officers to a sawed-off shotgun in the cab of a truck that he had walked past a few minutes

earlier. *Id*. at 1219. Defendant claimed that the police had arrested him without probable cause prior to finding the shotgun. This court held:

> a *Terry* stop does not become unreasonable just because police officers use handcuffs on a subject or place him on the ground. Further, the use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection. Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry*] stop.

*Id*. at 1220 (citations and internal quotation marks omitted; alterations in original).

Our decision in *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996), is similarly instructive. Three vehicles traveling together were stopped for speeding. When the officer radioed the drivers' identifying information to the dispatcher, he was informed that one of the drivers, Smith, was wanted on a weapons charge in another state and was considered armed and dangerous. Upon receiving this information, the officer, with the help of backup, had each of the six occupants of the three cars exit the vehicles one at a time, and the occupants were frisked, handcuffed, and made to kneel on the pavement, while the officers pointed their guns at them. About an hour after receiving the initial information, the officers learned that Smith was not in fact a wanted felon. All but one of the occupants remained handcuffed the entire time despite the fact that they had been frisked

and the officers knew they were not armed. *Id*. at 1496-99. This court found that, although it was a close question, the use of handcuffs was reasonable and did not transform the detention into an unlawful arrest so long as the officers had a reasonable suspicion that Smith was a wanted felon. *Id*. at 1507.

This case is not as close as *Shareef*. Mr. Kilgore was with Mr. Lewis when Mr. Lewis purchased a large quantity of pseudoephedrine and then tried to run over a police officer who was trying to stop Mr. Lewis's truck. For the officers' safety, Officer Miller fired his weapon to disable the vehicle. Mr. Kilgore could have been an innocent passenger or he could have been an accomplice as desperate to escape as Mr. Lewis. In this situation, it was entirely reasonable for the officers handcuff to both Mr. Kilgore and Mr. Lewis and place them in the back of a police car while conducting their investigation.

It is clear, however, that Mr. Kilgore was arrested after the inventory search of the vehicle. Mr. Kilgore alleges that the evidence found during the search does not constitute probable cause for such an arrest. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Pringle*, 540 U.S. at 371 (internal quotation marks omitted). The Supreme Court further stated in *Pringle* that "[t]he probable-cause standard is

-16-

incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id*.

In *Pringle*, the defendant was one of three men arrested riding in a car at 3:16 a.m. The officers found $763 in cash in the glove compartment and five baggies of cocaine behind the back-seat armrest. The defendant was riding in the front passenger seat. The men offered no information as to the ownership of the drugs or money and all three were arrested. *Id*. at 365-69. The Supreme Court found that probable cause existed for the arrest. The Court noted that

> [the defendant] and his two companions were in a relatively small automobile . . . [and] that a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

*Id*. at 373 (quotation omitted). The Court held:

> We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe [the defendant] committed the crime of possession of cocaine, either solely or jointly.

*Id*. at 372.

Here, Mr. Kilgore was in the passenger seat of Mr. Lewis's truck. The officers had information that Mr. Lewis was involved in the manufacture of

-17-

methamphetamine, they had watched Mr. Lewis exit the convenience store with a plastic bag that the manager had informed them by phone contained a large quantity of pseudoephedrine, Mr. Lewis had attempted to escape when he saw the officers pull up, the officers had found a case containing a large quantity of syringes and needles, including one used needle and syringe, on the floor board of the front passenger seat where Mr. Kilgore was seated, and the bag with the eleven boxes of decongestant tablets was found in the middle of the back seat "within [Mr.] Kilgore's reach." Aplt. App., Vol. 1, Doc. 7, Attach. A at 1-5. "The term "probable cause," according to it usual acceptation, means less than evidence which would justify condemnation. It imports a seizure made under circumstances which warrant suspicion." *Pringle*, 540 U.S. at 371 (internal quotation marks and alterations omitted). From the above, a reasonable officer could conclude that there was probable cause to believe that Mr. Kilgore had committed any of the offenses previously mentioned. [1]

**B. State Law Claims**

The district court found that Mr. Kilgore had also brought claims against the City under section 153 of Title 51 of the Oklahoma Statutes. Subsection A of that section provides that political subdivisions are liable for the tort of an

---

[1]    Because we find that there was no constitutional violation, we need not address the district court's determination regarding qualified immunity.

-18-

employee acting within the scope of his or her employment to the extent a private person would be liable.

Mr. Kilgore alleged that because the officers did not act with proper cause, they committed the torts of trespass upon the person, false arrest, and assault and battery. As the district court held, no trespass upon the person or false arrest occurred because the officers had sufficient cause to detain Mr. Kilgore in the manner that they did. Further, no assault or battery occurred because Officer Miller clearly had sufficient justification to shoot the front tire of the truck after Mr. Lewis tried to run him over and to handcuff Mr. Kilgore until it was determined what role he played in the matter.

### III. Conclusion

For the reasons set forth above, the judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-19-