**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

v.

RUDY VALENZUELA,

　　Defendant-Appellant.

No. 06-2206

(D.C. No. CR 04-1475 LH)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **HARTZ**, Circuit Judges.[**]

Albuquerque police officers responding to a burglary-in-progress call found Defendant Rudy Valenzuela, a felon, hiding inside a nearby car. A rifle was in plain view in the back seat of the car. A grand jury indicted Defendant on one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Following the denial of Defendant's motion to suppress the firearm and ammunition, Defendant entered a conditional plea of guilty reserving his right to appeal the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

court's ruling. See Fed. R. Crim. P. 11(a)(2). Defendant claims on appeal the district court should have suppressed the rifle and ammunition because the evidence was the fruit of an unlawful arrest. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I.

On appeal from an order denying a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and view the evidence in the light most favorable to the Government. See United States v. Walker, 474 F.3d 1249, 1252 (10th Cir. 2007). Following a hearing on Defendant's motion to suppress, the district court made findings consistent with the record. Around 5:00 p.m. on October 30, 2003, Gabriel Jaramillo heard noises in his backyard. After looking out a back window and seeing nothing suspicious, Jaramillo looked out his front window and saw a man running away with his pit bull puppy. Jaramillo did not confront the man because he was caring for his one year old son. Lisa McAllister, one of Jaramillo's neighbors, was in the apartment complex parking lot when she saw the man carrying Jaramillo's dog. McAllister confronted the man and asked him what he was doing with Jaramillo's dog. The man responded he was returning the dog, but no one was home. Sure that Jaramillo was home at the time, McAllister told the man to return the dog. The man refused, got into a blue car, and drove away hitting a parked car in the process. After the confrontation, McAllister spoke with Jaramillo. Neither Jaramillo nor McAllister contacted the police.

Shortly before midnight that evening, a man knocked on Jaramillo's front door. The knock awoke Jaramillo. Believing the man would go away, Jaramillo did not answer the

2

door. The man, however, continued knocking on the front door, back door, and windows for approximately ten minutes. The man was yelling that he was bringing Jaramillo's dog back and wanted a reward. While standing in a hallway inside his apartment, Jaramillo observed a Hispanic man wearing a dark t-shirt standing outside his backdoor carrying a rifle. Frightened, Jaramillo called the police.

Four officers from the Albuquerque Police Department responded to a burglary-in-progress call. Before making contact with Jaramillo, the officers combed the area around Jaramillo's apartment but did not find the man. Officer Garcia, the lead officer, spoke to Jaramillo. Jaramillo told Officer Garcia that earlier in the day a man had stolen his dog and that a man holding a rifle had been knocking on his doors and windows saying he had found his dog and wanted a reward. Officer Garcia told Jaramillo they would continue looking for the man.

As the officers walked back to their patrol cars, Officer Gutierrez noticed some movement inside a blue car parked approximately thirty feet from Jaramillo's apartment. Officer Gutierrez approached the car and saw Defendant inside the car "scrunched down in kind of like a fetal position, almost underneath the driving wheel." Officer Gutierrez also saw in plain view a rifle in the back seat of the car. The officers drew their weapons and ordered Defendant out of the car. Defendant did not immediately comply. Officer Garcia then opened the driver's side door and ordered Defendant to exit the car and lie down on the street. When Defendant got out of the car and before the officers asked him any questions, Defendant blurted out "I was just trying to return the dog." Officer Garcia handcuffed

Defendant. Officer Gutierrez secured the rifle. After running Defendant's name through the system, the officers learned Defendant was possibly a convicted felon.[1]

Defendant sought to suppress the rifle and ammunition arguing the officers exceeded the permissible scope of a Terry detention when they ordered him out of the car at gun point and handcuffed him. At that point, according to Defendant, the officer's conduct became an arrest unsupported by probable cause. The district court concluded the officers had reasonable suspicion to detain Defendant and order him out of the car, as well as probable cause to arrest him. Defendant entered a conditional plea of guilty to one count of possession of a firearm and ammunition by a felon. The district court sentenced him to 180 month imprisonment followed by three years of supervised release. Defendant timely appealed.

II.

On appeal, Defendant readily concedes the officers had reasonable suspicion to detain him and investigate. He argues, however, the officers used excessive force when the officers forced him out of his car at gun point and handcuffed him, thus converting the detention into an unlawful arrest. "Under the Fourth Amendment, the intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances." United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993). We review the ultimate determination of reasonableness de novo. See Walker, 474 F.3d at 1252.

---

[1] While Defendant was detained, Officer Garcia spoke with McAllister. McAllister gave Officer Garcia a description of the man she observed carrying Jaramillo's dog, as well as a description of the vehicle in which the man fled. McAllister's description matched Defendant and his car.

4

An officer may briefly detain an individual for an investigative purpose if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. See United States v. Sokolow, 490 U.S. 1, 7 (1989). The scope of a detention must be at all times reasonably related to the suspicious circumstances that justified the detention in the first place. See United States v. Neff, 300 F.3d 1217, 1220 (10th Cir. 2002). When a detention exceeds its permissible scope, it becomes an arrest and must be supported by probable cause. See id. The permissible scope of an investigative detention, however, "cannot be determined by reference to a bright-line rule[.]" Id. Rather, "common sense and ordinary human experience must govern over rigid criteria." Id. While investigative detentions must be fairly non-intrusive, "[a] law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrests exists." United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993).

The officer's conduct in this case did not exceed the scope of a Terry stop under the circumstances and was reasonable at all times. We have previously held a Terry stop does not necessarily become unreasonable because officers draw their weapons and point them at a subject. See United States v. Shareef, 100 F.3d 1491, 1506 (10th Cir. 1996); see also Neff, 300 F.3d at 1220. "[T]he use of guns in connection with a stop is permissible where the police reasonably believes the weapons are necessary for their protection." Perdue, 8 F.3d at 1462. In holding the use of firearms reasonable under certain circumstances, we noted that "[w]henever the police confront an individual reasonably believed to present a

serious and imminent danger to the safety of the police and public, they are justified in taking reasonable steps to reduce the risk that anyone will get hurt." United States v. Merritt, 695 F.2d 1263, 1274 (10th Cir. 1982).

In Perdue, for example, officers conducted a search of a rural property believed to be a site for marijuana cultivation. 8 F.3d at 1458. During the search, officers discovered several weapons in addition to large quantities of marijuana. Id. Two officers, who were assigned to secure the perimeter, heard over their radios that the officers found weapons during the search. Id. While the search was ongoing, the two officers observed a car entering the dirt road leading to the property. Id. On seeing the officers, the car attempted to turn around. Id. Before being able to do so, the two officers drew their weapons and ordered the two occupants of the car to get out and lie down on the ground. Id. We rejected Perdue's contention the officer's conduct was tantamount to an arrest. Id. at 1462-63. While recognizing that effectuating a Terry stop by pointing guns at a subject may, in some situations, elevate a seizure to an arrest, we held the officers did not act unreasonably under the circumstances. Id. at 1463. The officers knew guns were present on the property and "[t]his fact alone justifi[ed] any concerns the officers had for their personal safety." Id. See also Merritt, 695 F.2d at 1273 (holding officers acted reasonably in ordering a murder suspect believed to be heavily armed and dangerous out of his truck with guns drawn and pointed at the defendant).

Similarly, we have held a detention "does not become unreasonable just because police officers use handcuffs on a subject or place him on the ground." Neff, 300 F.3d at

6

1220. The use of handcuffs during the course of an investigative detention is a reasonable means of neutralizing potential danger. See Perdue, 8 F.3d at 1463. Ordering a suspect to lie down on the ground and handcuffing him, "provides the officers with a better view of the subject and prevent[s] him from obtaining weapons which might . . . [be] in the car or on his person." Id. In Shareef, for example, an officer stopped three vehicles for speeding. After checking for identifications and radioing it to a police dispatcher, the dispatcher reported one of the drivers was wanted on weapons charges and was considered armed and dangerous. 100 F.3d at 1495-97. When backup arrived, the officers, with guns drawn, ordered the occupants of the vehicle to exit the vehicles one by one. Id. at 1497. Each individual was frisked, handcuffed, and ordered to kneel on the payment. Id. About one hour and a half after initiating the detention, the officers learned the suspect was not in fact a wanted felon. Id. at 1498. We held that "although bordering on an illegal arrest, the precautionary measures of force employed by the officers were reasonable under the circumstances." Id. at 1506. We reasoned the officers' "reasonable belief that the defendants posed a danger justified the procedures in this case," and, therefore, "the officers were entitled to display their weapons . . . and to restrain the defendants[.]" Id. at 1506.

In much the same way, the officers in this case acted reasonably when, with weapons drawn, they ordered Defendant to lie down on the street and handcuffed him. The officers were responding to a potential burglary and had been informed the subject was armed. The officers were justified in their reasonable belief the subject could pose a danger to their safety. The officer's concern for their safety was heightened when Officer Gutierrez found

7

Defendant hiding inside of a car and observed a rifle within Defendant's reach. The officers acted reasonably in drawing their weapons, ordering Defendant to lie down on the street, and handcuffing him until the rifle could be secured and Defendant could be patted down to ensure he did not possess another weapon. See United States v. Sparks, 291 F.3d 683, 690 (2002) (concluding officers are entitled to seize evidence revealed in plain view during the course of a lawful investigatory detention). Officers should not be required to take unreasonable risks in performing their duties. Because "safety may require the police to freeze temporarily a potentially dangerous situation, both display of firearms and the use of handcuffs may be part of a reasonable *Terry* stop." Merkley, 988 F.2d at 1062. The district court properly denied Defendant's motion to suppress.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge