FILED
United States Court of Appeals
Tenth Circuit

March 10, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FLOYD EUGENE FISHER,

Defendant-Appellant.

No. 09-6142

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:08-CR-00293-F-1)**

---

Submitted on the briefs:[*]

Perry W. Hudson, Oklahoma City, Oklahoma, for Defendant-Appellant.

Robert J. Troester, Acting United States Attorney, Andre' B. Caldwell, Assistant
U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **HARTZ**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

Floyd Eugene Fisher was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) after police officers responding to an emergency "shots-fired" call found him at the scene armed with a .44 caliber revolver and ammunition. He appeals his conviction, arguing that the Government's introduction of this evidence at trial violated his Fourth Amendment rights. We have jurisdiction under 28 U.S.C. §1291, and we affirm.

## I. Background

On July 23, 2008, Oklahoma City police officer Jenny Scott-Beard and her partner were dispatched to the defendant's residence based on a 9-1-1 call indicating that someone had fired a gun there. The officers arrived on the scene at 9:15 p.m., three minutes after the call came in. Immediately upon their arrival, Sergeant Beard was waved down by a woman who told her that a "black male wearing a gold shirt" had "shot at her and her son." R. Vol. 3 at 17. Sergeant Beard then approached the only car parked in the driveway of the residence, which had its brake lights illuminated. With her weapon drawn, she yelled at the car's occupants to "get their hands up." *Id.* at 19. At that point the defendant, who was sitting in the front passenger seat, rolled down his window and stuck out his hands, revealing a gold sleeve. He then opened the door and started to get out of the car, at which point Sergeant Beard noticed the butt of a gun sticking out

from under his seat. She immediately ordered the defendant to the ground, handcuffed him, and seized the gun.

The defendant moved to suppress the gun and ammunition, arguing that he was unlawfully seized in violation of the Fourth Amendment because Sergeant Beard had no reasonable basis to suspect the occupants of the car of criminal activity. The district court disagreed. After a hearing, it denied the motion, concluding that "the standard of reasonable suspicion was met when the Terry[1] stop occurred" and that although the investigative stop was more aggressive than usual, the aggression was justified by the circumstances. *Id.* at 48 (footnote added). Among the facts the court found persuasive was the speed with which the officers arrived on the scene; the fact that gunplay was involved; that it was a high-crime area; the illumination of the car's brake lights, which may have indicated it was about to depart; and the fact that defendant matched the suspect's description.

The defendant does not challenge these factual findings on appeal; nor does he challenge the reasonableness or intrusiveness of Sergeant Beard's actions after he rolled down his window. His argument is limited to the first prong of the *Terry* analysis, that is, whether Sergeant Beard's decision to detain the car was justified at its inception. He contends that the facts, viewed objectively, were

---

[1]     *Terry v. Ohio*, 392 U.S. 1 (1968).

insufficient to justify a reasonable suspicion of criminal activity on the part of any particular occupant of the vehicle, and thus his Fourth Amendment rights were violated from the moment Sergeant Beard ordered him to show his hands.

## II. Discussion

In reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government and accept the district court's findings of fact unless clearly erroneous." *United States v. Neff*, 300 F.3d 1217, 1219 (10th Cir. 2002). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law that is reviewed de novo. *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993).

"[A] police officer can temporarily detain an individual suspected of criminal activity if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* at 1461 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The Fourth Amendment requires only a minimal level of objective justification for making a *Terry* stop." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994) (internal quotation marks omitted). Such an investigative stop can be justified by "considerably less than proof of wrongdoing by a preponderance of the evidence;" yet the Fourth Amendment requires "something more than an inchoate and unparticularized suspicion or hunch." *Id.* (internal quotation marks omitted).

Determining the constitutionality of an investigative stop is a two-part inquiry. First, we ask whether the officer's action was "justified at its inception." *Neff*, 300 F.3d at 1220 (internal quotation marks omitted). We then ask whether it was "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (internal quotation marks omitted). The only issue before us, however, is the reasonableness of the initial stop.[2] And because the car was parked in this case, we examine Sergeant Beard's initial act of ordering its occupants, at gun point, to show their hands.

A police officer cannot legally detain a person simply because criminal activity is afoot. The particular person that is stopped must be suspected of criminal activity. *United States v. Goodrich*, 450 F.3d 552, 560 (3d Cir. 2006). Defendant contends that Sergeant Beard could not have suspected him, in

---

[2]     The district court concluded that under the circumstances, the officers acted reasonably in displaying their weapons and ordering the vehicle's occupants to put up their hands, and that such action did not make the encounter tantamount to a warrantless arrest from its inception. The defendant does not challenge this holding, but complains the seizure was unconstitutional even if it was only an investigative stop, "because the officers lacked a *particularized and objective basis for suspecting the particular person stopped of criminal activity.*" Aplt. Br. at 18 (internal quotation marks omitted). As such, the issue of whether the officers' conduct exceeded the allowable scope of an investigative detention is not squarely before us. Nevertheless, we conclude that the initial show of force in this case was reasonably believed necessary for officer safety and did not elevate the stop to an arrest. *See Perdue*, 8 F.3d at 1462 ("The use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection.") (internal quotation marks and alteration omitted).

particular, because she did not know when she approached the car that a black man with a gold shirt was inside. But this argument misses the central point of the district court's holding, which was that any reasonable police officer in Sergeant Beard's position would have had a particularized and objective basis for detaining the car in which the defendant was sitting. Defendant seizes on Sergeant Beard's testimony that she would have approached any and all cars at the scene looking for potential witnesses or suspects, to argue she lacked a particular basis for suspecting him of criminal activity. Sergeant Beard's subjective motivations for making the stop, however, are not relevant. In measuring an officer's actions under the Fourth Amendment, we look only at the objective facts, not the officer's state of mind. *Neff*, 300 F.3d at 1222; *see also United States v. Brown*, 334 F.3d 1161, 1166 (D.C. Cir. 2003) (noting that a police officer is not required to resolve the occupants' status before stopping a car).

Here, the objective facts support a finding of reasonable suspicion. This is not a case where police officers were driving around a bad neighborhood stopping random vehicles. In this case, law enforcement was responding to a 9-1-1 call late at night, in a high crime area, with every reason to suspect gunplay, and the only vehicle at the scene looked as if it was about to depart. We agree with the district court that under these circumstances, the officers would have been remiss, both for the protection of the public and themselves, in not approaching that car

-6-

to investigate the situation.  Other courts have upheld the constitutionality of investigative detentions under similar circumstances.  *See Goodrich*, 450 F.3d at 562, 563 (upholding *Terry* stop where defendant "was found near in time and geographic proximity" to the crime, and police "observed no other occupied vehicles in the vicinity"); *United States v. Raino*, 980 F.2d 1148, 1150 (8th Cir. 1992) (upholding *Terry* stop where "the officers were responding to a late-night call that shots had been fired in precisely the area appellant's car was parked").

Most notably, in *United States v. Brown*, 334 F.3d 1161 (D.C. Cir. 2003), the court upheld a *Terry* stop by police officers responding to a report of gun fire in a nearly deserted parking lot.  Only two cars were in the lot, and the police detained them both, eventually arresting one of the occupants for illegal possession of a firearm.  The appeals court rejected the defendant's efforts to suppress the firearm under the Fourth Amendment, holding that it was reasonable for law enforcement to suspect criminal activity under the circumstances.  It was late at night; the officers were responding to a shots-fired call in a high-crime area; and there were only two cars in the parking lot.  In *Brown*, thirty minutes had elapsed between the time of the call and the challenged encounter, but the court rejected the notion that such a passage of time eliminated all reason for suspicion, noting that "it was certainly plausible that the person or persons who fired the gunshots might not have departed the area." *Id.* at 1166.

We conclude the officers' investigative detention in this case was likewise reasonable. The judgment of the district court is, therefore, AFFIRMED.