FILED
United States Court of Appeals
Tenth Circuit

July 31, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GLENDA SHEROUSE and SYLVIA
AVILA,

Plaintiffs-Appellants,

v.

SUZANNE RATCHNER, YLAINE
HETES, JOSEPH DURAN, JEFF T.
STONE, CHRISTOPHER A.
HARMON, MARTIN SMITH and
STEPHEN J. POWERS, in their
individual capacities, and CITY OF
ALBUQUERQUE,

Defendants-Appellees.

No. 08-2105

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. Civ. No. 1:01-CV-0349 JC/LAM)**

---

Paul J. Kennedy, Kennedy & Han, P.C. (Mary Y. C. Han, Kennedy & Han, P.C.,
and Caren I. Friedman, Santa Fe, New Mexico, with him on the briefs),
Albuquerque, New Mexico, for Plaintiffs-Appellants.

Lisa Eutes Pullen, Civerolo, Gralow, Hill & Curtis, P.A., (Megan Day Hill,
Civerolo, Gralow, Hill & Curtis, P.A., and Kathryn Levy, Deputy City Attorney),
Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **LUCERO**, **HOLLOWAY** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

Glenda Sherouse, an African-American girl who was 14 years old at the time of the events in this case, and her friend Sylvia Avila, an Hispanic girl then 13 years old, were hauled by Albuquerque police officers to the police station on suspicion of criminal activity, and thereafter released. They later sued the police officers and the City of Albuquerque, under 42 U.S.C. § 1983. A jury found in favor of the defendants, and the district court denied the plaintiffs' motion for judgment as a matter of law and their motion for a new trial. Ms. Sherouse and Ms. Avila appeal, objecting to the jury instructions and the denial of their motion for judgment as a matter of law. We affirm in part and reverse in part.

## I. Background

On a single day in July, three armed robberies took place in quick succession in Albuquerque, New Mexico. One of these robberies took place at Shoes on a Shoestring, and witnesses there described the robber as black, female, roughly 5'2", and 110 or 120 pounds. Their descriptions of the robber's age were inconsistent—many suggested she was approximately seventeen, while at least one other suggested she was in her twenties. Dispatch also issued conflicting reports, saying that the robber involved was a "black female juvenile" or a "black female adult."

Shortly after the robberies, the police received an unrelated call from an area resident that two suspicious young females, Ms. Sherouse and Ms. Avila, had

been sitting on the curb outside her apartment complex, which was near Shoes on a Shoestring. The call reported that the black female had put on a sweater given to her by Ms. Avila. An investigating officer determined that the two girls had visited a friend in the complex, Alexis Hannah, and retrieved a sweater belonging to Ms. Sherouse. Ms. Hannah reported that the girls had left to go to Ms. Avila's apartment. The police found the girls sitting outside Ms. Avila's apartment shortly thereafter. Concluding that Ms. Sherouse matched the description of the robber and the separate description of the individual who visited Ms. Avila, the police officer on scene, Officer Stone, handcuffed Ms. Sherouse "because she potentially was the one that was armed," patted her down, and placed her into the back of the police car. Aplt. App'x 715.

The police then brought witnesses from the robbery to identify the girls. The parties dispute whether any of the witnesses firmly identified Ms. Sherouse, but the police testified that several witnesses thought she was the robber. None of the witnesses identified Ms. Avila. The police then transported both girls to the station against their will to continue the investigation. The officers claimed they had probable cause to believe Ms. Sherouse committed robbery, and that Ms. Avila was either an aider-and-abetter or conspirator, having helped Ms. Sherouse to disguise her identity by giving her the sweater.

Defendants moved for summary judgment, claiming that the officers were entitled to qualified immunity. In its order denying summary judgment, the

district court said: "Defendants contend that 'probable cause existed for the arrest of Glenda Sherouse when the officers received a positive identification from a witness [Inez Rubio],' thus, Plaintiffs' arrest was reasonable. Defs.' Mem. at 21. Were this an undisputed fact, Defendants most likely would be entitled to qualified immunity. However, in this case, the critical fact of whether a witness positively identified Plaintiff Sherouse is in sharp dispute." Aplt. App'x 252-53. The defendants appealed this decision. We dismissed the appeal for lack of jurisdiction, stating: "We may hear an interlocutory appeal from the denial of a motion for summary judgment claiming qualified immunity when the appeal presents a 'purely legal determination,' such as whether a constitutional right was clearly established at the time the facts giving rise to the case occurred . . . however, courts of appeals clearly lack jurisdiction to review summary judgment orders deciding qualified immunity questions solely on the basis of evidence sufficiency—which facts a party may, or may not, be able to prove at trial." *Jeffrey v. Ratchner*, 84 Fed. App'x 38, 41 (10th Cir. 2003) (internal citations and quotations omitted).

At trial, Ms. Sherouse and Ms. Avila did not seek redress based on their initial seizure outside Ms. Avila's apartment, but only on the basis of their subsequent transportation to the police station. The plaintiffs introduced evidence that Ms. Rubio never identified Ms. Sherouse, and "according to the magistrate judge, without such an identification Appellants lacked probable cause to

-4-

transport Plaintiffs to the substation." *Id.* at 42. The jury found for the police officers. Ms. Sherouse and Ms. Avila now challenge the propriety of one jury instruction given by the court, the district court's refusal to give another, and whether the court properly denied judgment for them as a matter of law.

## II. Discussion

### A.    Jury Instruction 12

At trial, Ms. Sherouse and Ms. Avila objected to Jury Instruction 12, which states in relevant part: "A police officer's probable cause determination is not negated if the officer reasonably but mistakenly believed that probable cause existed at the time of arrest." Aplt. App'x 377. They claimed the instruction was erroneous because it incorrectly suggested that "a mistake of law as to probable cause would exonerate the officer." *Id.* at 757. The district court found that Jury Instruction 12 "did not permit the jury to impermissibly 'exonerate' Defendants." *Id.* at 405.

Although on a motion to suppress the ultimate question of the reasonableness of a search or seizure is regarded as a question of law subject to de novo review by the appellate court, in a damages action based on an alleged Fourth Amendment violation the reasonableness of a search or seizure is a question for the jury. *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007); *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1215 (10th Cir. 2008). We review de novo whether the jury was misled on the applicable law. *Smith v. Ingersoll-*

*Rand Co.*, 214 F.3d 1235, 1250 (10th Cir. 2000). An erroneous jury instruction requires reversal, however, "only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir. 1984).

Whether a situation indicates probable cause for arrest depends on an officer's subjective understanding of the facts, as well as the objective application of the law to those facts. While an officer's reasonable but mistaken understanding of the *facts* justifying a search or seizure does not negate the legitimacy of a probable cause determination, an officer's reasonable but mistaken understanding of the applicable law he is enforcing does. *United States v. DeGasso*, 369 F.3d 1139, 1144–45 (10th Cir. 2004). In *DeGasso*, for example, a police officer reasonably but incorrectly interpreted state law as forbidding motorists to illuminate their fog lights during daylight hours. This Court held that such a mistake about the "law he is charged with enforcing" could not support probable cause or provide reasonable suspicion. *Id.* at 1144. By contrast, in *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990), the Supreme Court held that a police officer's reasonable mistake of fact does not negate probable cause, noting that the Fourth Amendment does not require "factual accuracy." It gave the example of a search incident to arrest, noting that such an arrest would be lawful even if it was based on misidentification. *Id.*

Here, Jury Instruction 12 did not distinguish between these two potential mistakes. Under some circumstances, this instruction could therefore be misleading and prejudicial. But under the circumstances of this case, the officers' mistake was based on misidentification, as in *Rodriguez*, and the plaintiffs have not identified any misinterpretation of law that could have been pertinent to the officers' actions.[1] The officers correctly understood the nature of the alleged crime; their error was entirely in concluding that Ms. Sherouse's description matched that given by dispatch, in crediting the statements of witnesses who, according to the officers, identified Ms. Sherouse as the robber, and in overestimating the significance of other circumstantial evidence. The jury concluded, on these facts, that the officers' actions were reasonable. That may or may not have been a defensible decision (below, we conclude that as to Ms. Avila it was not), but none of this had anything to do with mistakes of law on the part of the officers.

## B. Proffered Jury Instruction

Ms. Sherouse and Ms. Avila also objected to the district court's failure to give their proffered jury instruction, which read: "Transportation to and investigation at a police station house without probable cause violate a citizen's

---

[1] This Court dismissed a prior interlocutory appeal in this case on the ground that the liability of the officers depended on the sufficiency of the evidence before the district court on summary judgment rather than any question of law. *Jeffrey v. Ratchner*, 84 Fed. App'x 38, 41 (10th Cir. 2003).

constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution." Aplt. App'x at 352. The district court found that Ms. Sherouse's and Ms. Avila's proffered instruction was "imprecise and confusing in its breadth" because it did not "leave[] room for there ever to exist a lawful (voluntary, for example) transport or investigation in the absence of probable cause." *Id.* at 406. We review for abuse of discretion a district court's decision not to give a tendered jury instruction. *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1022 (10th Cir. 2004). We review de novo whether the instructions as a whole accurately informed the jury of the governing law. *Allison v. Bank One-Denver*, 289 F.3d 1233, 1241 (10th Cir. 2002).

The district court correctly recognized that the proffered jury instruction did not explain that a voluntary transport to the police station, even without probable cause for arrest, was lawful. The defendants concede, however, that "there was no evidence presented [at trial] that Plaintiffs . . . consented to the transport to the substation." Aple. Br. 17. We have held that there is no need to instruct the jury on particular exceptions to a rule if such an instruction would not "clarify the issues or . . . contribute any information which would have aided in deciding the case." *United States v. Gilbert*, 447 F.2d 883, 887 (10th Cir. 1971); *see also United States v. Russo*, 527 F.2d 1051, 1059 (10th Cir. 1975) (holding there was no need to instruct the jury as to a specific theory of the case when the facts clearly did not support such a theory). Because the defendants conceded

that the transport was involuntary, any instruction on involuntary transportation would not have clarified any issues or aided the jury in deciding the case. Thus, the proffered instruction accurately stated the law.

Even so, the district court did not abuse its discretion in declining to give the instruction. "[W]here the material issues in the case have been comprehensively and correctly covered in the general instructions, it is not error to refuse requested instructions even though they be correct statements of law." *Walker v. Dean*, 333 F.2d 753, 755 (10th Cir. 1964). Here, the substance of the proffered instruction was covered by aspects of Jury Instruction 11, which explained the ways in which Ms. Sherouse and Ms. Avila could prevail, including by demonstrating they were arrested without probable cause. The defendants conceded that transporting the girls to the police station was equivalent to an arrest, Aplt. App'x 794–95, so the jury knew that the decision to transport them had to be supported by probable cause. Thus, the district court did not abuse its discretion in declining to give the proffered jury instruction.

## C. Judgment as a Matter of Law

After the jury returned a verdict in favor of the defendants, Ms. Sherouse and Ms. Avila filed a motion for judgment as a matter of law or, in the alternative, for a new trial. The district court denied the motion. On appeal, Ms. Sherouse and Ms. Avila argue that the facts compel the conclusion that their

constitutional rights were violated, and thus that the district court erred in denying their motion.

We review de novo the denial of a motion for judgment as a matter of law. *See Hysten v. Burlington No. Santa Fe Ry. Co.*, 530 F.3d 1260, 1269 (10th Cir. 2008). A party is entitled to judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007) (internal quotations omitted). We affirm the denial of the motion as to Ms. Sherouse, but reverse as to Ms. Avila.

If the officers' version of the facts is believed, they chose to transport Ms. Sherouse to the station only after three witnesses had either positively identified her as the robber or suggested that it was likely that she was the perpetrator. Ms. Sherouse disputed whether any of the witnesses positively identified her, and put forth evidence establishing that at least two of the officers claiming that the witnesses identified Ms. Sherouse failed to indicate that fact in their reports. One officer even wrote in his report that "[n]o one was able to positively identify Sherouse as the offender. All witnesses were uncertain." Aplt. App'x 157. Two witnesses also testified at trial or by affidavit that the police misrepresented whether they had identified Ms. Sherouse. Still, one of the witnesses acknowledged at trial that she had told the officer that Ms. Sherouse looked similar to the robber. Moreover, several of the officers understood on the basis of

-10-

dispatch reports that the robber was a "black female juvenile," not a "black female adult" as Ms. Sherouse insists. Based on her physical resemblance to the robber, her proximity to the robberies, and the officers' reasonable belief that several of the witnesses had suggested she was the robber, a reasonable inference can be drawn that the officers had probable cause to arrest Ms. Sherouse. This is enough to permit a reasonable jury to decide in favor of the defendants. Thus, we affirm the district court's denial of Ms. Sherouse's motion for judgment as a matter of law.

The police had much less evidence to support a probable cause determination for Ms. Avila. The totality of the officer's evidence consisted of the following: a resident who lived near one of the robberies reported that Ms. Avila appeared suspicious because she was sitting with Ms. Sherouse on the curb in front of the resident's apartment complex and staring at her; Ms. Avila entered Ms. Hannah's apartment and obtained a red sweater that belonged to Ms. Sherouse, which Ms. Sherouse then wore; and lastly, Ms. Hannah explained that Ms. Avila and Ms. Sherouse were her friends, and that she had given Ms. Sherouse's sweater back to Ms. Avila. Even accepting these facts as true, they do not support a reasonable inference that the officers had probable cause to arrest Ms. Avila.

We have long recognized that "[p]robable cause requires more than a mere suspicion of criminal activity." *United States v. Welker*, 689 F.2d 167, 169 (10th

Cir. 1982). "[A]ssociation with known or suspected criminals is not enough in itself to establish probable cause." *United States v. Hausen*, 652 F.2d 1374, 1388 (10th Cir. 1981). There were many plausible explanations for Ms. Avila's behavior, only one of which involved a criminal intent. *Cf. State v. Gibson*, 828 P.2d 980, 985 (N.M. Ct. App. 1992) (aiders and abettors must share criminal intent of principal). The police argue that they believed Ms. Avila was helping Ms. Sherouse conceal her identity by providing her with the red sweater; however, the facts raise nothing more than a suspicion of such criminal activity. Ms. Avila may have retrieved the sweater so the two could leave, or she may have provided it to her friend for warmth. Where an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest. *See, e.g.*, *United States v. Welker*, 689 F.2d 167, 169 (10th Cir. 1982).

Because the officers knew only that Ms. Avila gave a red sweater to Ms. Sherouse and sat on a curb with her, they lacked probable cause and the district court erred by not granting her motion for judgment as a matter of law.

### III. Conclusion

Accordingly, we **AFFIRM** the district court's decision to issue Jury Instruction 12 and **AFFIRM** the rejection of the plaintiffs' proffered jury instruction. We also **AFFIRM** the district court's denial of Ms. Sherouse's

motion for judgment as a matter of law.  We **REVERSE** the denial of Ms. Avila's

motion for judgment as a matter of law, and remand for further proceedings.