FILED
United States Court of Appeals
Tenth Circuit

October 3, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDWARD HENRY,

     Plaintiff - Appellant,

v.

OFFICER JACOB STOREY;
OFFICER AMY FANGIO,
individually and in their official
capacities as Officers of the
Albuquerque Police Department,

     Defendants - Appellees,

CITY OF ALBUQUERQUE,
Albuquerque Police Department, a
municipal entity organized under the
laws of the State of New Mexico and
its law enforcement agency; MARTIN
J. CHAVEZ, individually and in his
official capacity as Mayor of the City
of Albuquerque; RAY SCHULTZ,
individually and in his official
capacity as Chief of Police of the City
of Albuquerque,

     Defendants.

No. 10-2211

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:08-CV-00483-JCH-ACT)**

---

Submitted on the briefs:[*]

Dennis W. Montoya of Montoya Law, Inc., Rio Rancho, New Mexico, for Plaintiff - Appellant.

Kathryn Levy, Deputy City Attorney for the City of Albuquerque, Albuquerque, New Mexico, for Defendants - Appellees.

---

Before **KELLY**, **SILER**[**], and **MATHESON**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiff-Appellant Ed Henry appeals from the district court's final judgment in favor of Defendants-Appellees Jacob Storey and Amy Fangio after a jury trial. He contends that the district court erred in (1) granting judgment as a matter of law (JMOL) to these Defendants on two of his claims and (2) rejecting a proposed jury instruction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

In 2008, Mr. Henry filed a civil-rights complaint against several

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore is ordered submitted without oral argument.

[**] The Honorable Eugene E. Siler, Jr., U.S. Circuit Court Judge, Sixth Circuit, sitting by designation.

Defendants pursuant to 42 U.S.C. § 1983.[1]  The complaint arose from a night-time police stop.  Aplt. App. 6-7, 216.  Mr. Henry, who is African-American, was pulled over in a rental vehicle.  Id. at 2, 5-7.  He was ordered out, handcuffed, and placed in the back of a marked police vehicle.  See id. at 175-84, 191-92.  After an investigation, officers realized that the rental  vehicle driven by Mr. Henry had been erroneously reported as stolen.  Id. at 204-05.  Mr. Henry was then released. Id.

In his complaint, Mr. Henry alleged that he was singled out because of his race, in violation of the Fourteenth Amendment.  Id. at 19.  He also alleged that the officers used excessive force in violation of the Fourth Amendment, including handcuffs that were too tight, rude language, and weapons aimed at him.  Id. at 20-22.

The case proceeded to trial.  At the close of Mr. Henry's case in chief, Officers Storey and Fangio moved for JMOL, Fed. R. Civ. P. 50(a)(1).  Id. at 322. The district court granted the motion in part, stating that Mr. Henry presented no evidence that (1) Officer Storey used excessive force or (2) Officer Fangio engaged in racial profiling.  Id. at 339-40.  The case went to the jury on the racial profiling claim against Officer Storey and the excessive force claim against Officer Fangio.

---

[1]At trial, the only remaining Defendants were Officers Storey and Fangio.  This appeal deals exclusively with the counts against them.

Defendants put on no evidence. Id. at 345. Mr. Henry proposed a jury instruction to the effect that the officers' compliance with standard operating procedures could not be considered in determining whether they used excessive force. Id. at 342-43; see id. at 29. The court did not so instruct the jury.

The jury returned a verdict in favor of Officers Storey and Fangio on the remaining claims. Id. at 404-05. Specifically, the jury found that Officer Storey had not engaged in racial profiling and that Officer Fangio had not used excessive force. Id. at 405. On appeal, Mr. Henry challenges the district court's grant of JMOL and refusal to submit his proposed instruction to the jury.

## Discussion

A.    *Judgment as a Matter of Law.*

We review de novo the district court's disposition of a motion for JMOL. Manzanares v. Higdon, 575 F.3d 1135, 1142 (10th Cir. 2009). JMOL is appropriate if, after a party has presented its evidence, the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). We draw all inferences from the evidence in favor of the non-moving party, and do not weigh the evidence or judge witness credibility. Higdon, 575 F.3d at 1142.

As noted, the district court granted JMOL to Officer Storey on Mr. Henry's excessive-force claim and to Officer Fangio on Mr. Henry's racial-profiling

- 4 -

claim. Aplt. App. 339-40. The court found evidence lacking to show (1) that Officer Storey used any force against Mr. Henry and (2) that Officer Fangio engaged in racial profiling. Id. After reviewing the record, we agree.

*1. Officer Storey.*

Testimony at trial established the following. While on patrol in central Albuquerque around midnight, Officer Storey entered the license plate of Mr. Henry's vehicle into his dashboard computer. Id. at 169, 198. The computer, which was connected to the National Crime Information Center ("NCIC"), returned a "hit," meaning that the license plate number had been reported as stolen. Id. at 169, 199. Upon returning a hit, other officers were automatically dispatched to the scene. Id. at 171. When a second patrol car arrived, Officer Storey turned on his emergency lights, and Mr. Henry pulled to the side of the road. Id. at 173.

Officer Storey remained in his vehicle and, using the PA system, ordered Mr. Henry to show his hands, turn the vehicle off, get out of the vehicle, and stand with his back to the officers. Id. at 175-78. At this point, six officers were at the scene. Id. at 178. Mr. Henry testified that he saw six guns aimed at him, although he did not know whether Officer Storey had his weapon drawn. Id. at 272. Officer Storey testified that his weapon was holstered because he was using the PA. Id. at 178.

Over the PA, Officer Storey ordered Mr. Henry to pull up his shirt to reveal

the waistband of his pants and turn in a circle. Id. at 179-80. Satisfied that Mr. Henry did not have a weapon tucked into his pants, Officer Storey ordered him to walk slowly backwards towards the officers' vehicles. Id. at 180. When Mr. Henry was close to the vehicles, Officer Storey ordered him to kneel or lie down. See id.; id. at 279. Officer Fangio handcuffed Mr. Henry, performed a pat-down, and placed him in the back seat of Officer Storey's police vehicle. Id. at 181, 224-25, 280-81. After Mr. Henry was placed in the police vehicle, officers approached the rental vehicle he was driving to make sure no one else was inside. Id. at 192.

Mr. Henry promptly complied with all orders. Id. at 177-78, 202. He did not violate any traffic laws. Id. at 173. Mr. Henry testified that he was told to "shut up" over the PA system, presumably by Officer Storey. Id. at 275. He also testified that Officer Fangio knelt on his back and that the handcuffs were too tight, causing bruising and discomfort. See id. at 280, 284, 296.

Mr. Henry argues that Officer Storey used excessive force against him by "aiming a deadly weapon at [Mr. Henry's] head from mere feet away." Aplt. Br. at 10. According to Mr. Henry, Officer Storey had no reason to believe that he stole the vehicle by violence. Moreover, he argues, he did not in fact pose a threat to officers and did not attempt to flee; thus, Officer Storey was not justified in aiming his weapon. Id. at 10-12. We are not persuaded. First, we doubt whether the record contains sufficient evidence for a reasonable jury to conclude

- 6 -

that Officer Storey aimed a weapon at Mr. Henry. Second, even if it does, Officer Storey's use of force was not excessive under the facts known to him at the time.

Mr. Henry's argument that Officer Storey used excessive force relies on a single factual premise: that Officer Storey aimed a firearm at him. See Aplt. Br. 10, 13-14. Officer Storey specifically testified that he "had [his] gun holstered at the time while [he] was on [the] PA," although "[t]he other officers had their firearms drawn, and they were pointed down towards Mr. Henry in the vehicle." Id. at 178. Mr. Henry testified that when he initially exited the vehicle, he saw six guns pointed at him. Id. at 272. However, he later specifically testified that he "[didn't] know exactly who was pointing guns," and that he did not know whether Officer Storey was pointing a gun at him. Id. at 304-05. Even if the jury disregarded Officer Storey's testimony as not credible, Mr. Henry's testimony itself established only that he saw six guns aimed at him; it did not establish that Officer Storey was wielding one of them. Thus, we doubt whether Mr. Henry's testimony provided a reasonable jury with "legally sufficient basis" to find, by a preponderance of the evidence, that Officer Storey pointed a weapon at him. Fed. R. Civ. P. 50(a)(1).

In any event, even if Mr. Henry produced sufficient evidence to establish that Officer Storey pointed a weapon at him, Officer Storey's actions did not constitute excessive force. "In determining whether a use of force is reasonable under the Fourth Amendment, we balance the nature and quality of the

encroachment on the individual's Fourth Amendment interests against the government's countervailing interests." Lundstrom v. Romero, 616 F.3d 1108, 1126 (10th Cir. 2010) (citation omitted). When conducting this inquiry, "the 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Sturdivan v. Murr, 511 F.3d 1255, 1259 (10th Cir. 2008) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). We consult three non-exclusive factors to determine whether an officer's use of force is reasonable: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether the suspect is actively resisting arrest or evading arrest by flight. See Lundstrom, 616 F.3d at 1126.

Viewing the facts from a reasonable officer's point of view, Officer Storey did not use excessive force by pointing his weapon at Mr. Henry. Officer Storey had probable cause to believe Mr. Henry had stolen a vehicle, a felony. Officer Storey could reasonably conclude that the driver posed an immediate threat to the safety of the officers and the public—a driver caught with a stolen vehicle has strong incentive to evade arrest, given the seriousness of the crime. Further, the means of evading arrest were close at hand: the driver was in the vehicle with the engine running. See Aplt. App. 217, 302-304. The incident took place late at night, within Albuquerque city limits. Id. at 214-15. Any resulting chase could place the officers and the public at risk. Although Mr. Henry was not actively

resisting or evading arrest by flight, under the circumstances the amount of force used by Officer Storey was reasonable.  To conclude otherwise would merely second-guess an officer's on-the-ground decision using the benefit of 20/20 hindsight.  See Sturdivan, 511 F.3d at 1259.

We  reject Mr. Henry's implicit contention that only vehicles stolen by force pose a threat to officers and the public.  See Aplt. Br. 9-11.  A person who steals a vehicle non-violently still has the incentive and capability to evade arrest by fleeing in the vehicle.  Mr. Henry's proposed bright-line rule—that officers may aim weapons at the occupants of a reportedly stolen vehicle only when they have reason to believe the vehicle was stolen by force or violence—has no basis in Tenth Circuit precedent, and we see no reason to adopt it now.

Mr. Henry also argues that it "appears that [Officer] Storey deliberately ignored additional information that would have told him that the car was alleged to have been stolen without the use of violence, although that information was readily available to him" and that "[i]f [Officer] Storey had bothered to read the remarks, he would have known that there was no allegation that the vehicle in question had been taken through force or the use of violence."  Aplt. Br. at 9.  As we note above, the mere fact that a vehicle was stolen by non-violent means does not obviate officers' need to proceed with caution.  Regardless, the factual basis for Mr. Henry's argument is not in the record.  Officer Storey repeatedly testified that he did not have information regarding how the vehicle was stolen.  Aplt.

App. 171-72, 222. The record contains no information as to the contents of the NCIC "hit" in this case, much less evidence that Officer Storey deliberately ignored information that the car had been stolen by non-violent means. Officer Fangio testified that, generally, an NCIC "hit" should contain a remark if a vehicle was stolen by force. Id. at 259-60. But that does nothing to prove whether, in this case, the NCIC "hit" indicated any of the circumstances surrounding the vehicle's theft or, if so, what that information was. With the benefit of hindsight, we know that Mr. Henry did not steal the vehicle by force. However, there is absolutely no evidence as to the circumstances under which the vehicle was erroneously reported as stolen. Accordingly, there was no basis for a reasonable jury to conclude that Officer Storey deliberately ignored information that the vehicle was not stolen by means of violence or force. The district court correctly granted JMOL to Officer Storey on the excessive-force claim.

Mr. Henry cites no case holding that pointing a firearm at a suspect, without more, constitutes excessive force. The cases he does cite—Cortez v. McCauley, 478 F.3d 1108 (10th Cir. 2007), United States v. Neff, 300 F.3d 1217 (10th Cir. 2002), and Lundstrom v. Romero, 616 F.3d 1108 (10th Cir. 201), see Aplt. Br. 13—are not on point. In McCauley, the plaintiffs did not allege that the officers' use of firearms constituted excessive force. See 478 F.3d at 1126, 1130. We noted that "prior cases finding excessive force have involved the pointing of guns," but only in the context of holding that officers were on notice

that the force used on Ms. Cortez was excessive despite the *absence* of any allegations that the officers pointed weapons. Id. at 1131-32. In other words, our discussion of officers' use of weapons in McCauley established only that the officers' aiming of weapons in prior cases did not distinguish those cases for qualified immunity purposes. Accordingly, McCauley does not support Mr. Henry's contention that, under the circumstances of this case, Officer Storey's use of force was excessive.

United States v. Neff did not involve an excessive-force claim. In that case, the plaintiff alleged that the officers' use of handcuffs and display of weapons exceeded the permissible scope of a Terry stop. 300 F.3d at 1220. We held that it did not. Id. at 1221. Our analysis focused mainly on the use of handcuffs. We noted, in passing, that the officers' use of guns did not exceed the scope of a Terry stop because it was based on the officers' reasonable belief that weapons were necessary for their protection. See id. at 1220-1222. Accordingly, Neff does nothing to establish that aiming a weapon under the circumstances before us constitutes excessive force.

In Lundstrom v. Romero, Mr. Lundstrom's excessive-force claim was predicated on officers pressing him against a vehicle, shoving him to the ground, placing an elbow or knee against his head, and twisting his arm behind his back. 616 F.3d at 1127. The officers' display of weapons was not part of the excessive-force analysis. See id. The language quoted by Mr. Henry—that "the pointing of

- 11 -

firearms should be predicated on at least a perceived risk of injury or danger to the officers or others," see Aplt. Br. 13—appeared in the context of plaintiffs' claims that they were unlawfully seized when the officer aimed a weapon at them at the front door of their home. Lundstrom, 616 F.3d at 1121. Because the analysis in Lundstrom did not take place in the context of an excessive-force claim, we fail to see how it is applicable here.

Our independent research reveals only one case in which we held that officers' aiming of firearms, without more, constituted excessive force. See Holland v. Harrington, 268 F.3d 1179 (10th Cir. 2001). But Holland involved a SWAT team detaining, at gunpoint, several bystanders' children who were not suspected of a crime, all in the course of executing a misdemeanor warrant. Id. at 1183, 1192-93. Accordingly, Holland has little, if any, bearing on the outcome of this case, where Officer Storey aimed his weapon at an adult who was suspected of a serious crime.

*2. Officer Fangio.*

The district court granted JMOL to Officer Fangio on Mr. Henry's racial-profiling claim. Aplt. App. 339-40. In that claim, Mr. Henry alleged that Officer Storey "ran" his license plates—which eventually led to Mr. Henry being pulled over—solely because of his race. See Aplt. Br. 15 ("[Mr. Henry's] claims under the Fourteenth Amendment and 42 U.S.C. § 1983 . . . allege that Defendants racially profiled him because he is Black by deciding to 'run' the license plate of

his rental car . . . .").

Mr. Henry's argument rests on a premise the evidence does not support: that Officer Fangio was somehow involved in Officer Storey's decision to run Mr. Henry's license plates. To the contrary, the record supports only the conclusion that Officer Storey made the decision to run Mr. Henry's plates. See Aplt. App. 169-70. Accordingly, no reasonable jury could conclude that Officer Fangio racially profiled Mr. Henry by deciding to run his license plates based on his race.

Mr. Henry argues that Officer Fangio could have been liable for racial profiling because she eventually participated in Mr. Henry's detention. Aplt. Br. 19. But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential. See, e.g., Foote v. Spiegel, 118 F.3d 1416, 1423-24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (citation omitted)); Trujillo v. Williams, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established." (emphasis added) (citation omitted)). Thus, Officer Storey's allegedly discriminatory decision to check the license plate on Mr. Henry's rental vehicle cannot result in liability for Officer Fangio, where there is no evidence

that Officer Fangio herself engaged in discriminatory conduct.[2]

*B.*     *Jury Instructions.*

Mr. Henry proffered the following jury instruction:

>  Evidence has been presented during the course of this trial regarding the defendant officers' compliance with Standard Operating Procedure of their police department.  Compliance with Standard Operating Procedure is not to be considered by you in determining whether the degree of force used against the plaintiff violated his rights under the Constitution.  Instead, you are to consider only whether the degree of force used against the Plaintiff was reasonable under the totality of the circumstances and from the point of view of reasonable police officers at the time and place of the occurrences.
> Aplt. App. 29.

The district court did not give the instruction.  Defendants do not contend that the proffered instruction misstates the law.  Rather, they contend that the instruction was not necessary because instructions numbers 6 and 11 properly instructed the jury on the elements of an excessive-force claim.  See Aplee. Br. at 13.

Jury instruction number 11 provided, in relevant part,

>  You must determine whether the force used in making the detention or arrest of Plaintiff was unnecessary, unreasonable, or excessively violent.  The force used in making a detention or arrest is unnecessary, unreasonable, or excessively violent if the detaining or arresting officer exceeded that degree of force which a reasonable and prudent law enforcement officer would have applied in making

---

[2]The jury found that Officer Storey did not, in fact, engage in racial profiling.  See Aplt. App. 405.

the detention or arrest under the same circumstances.

Whether the force used by an officer is reasonable depends on the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.

Aplt. App. 41.

"We review for abuse of discretion a district court's decision not to give a tendered jury instruction." Sherouse v. Ratchner, 573 F.3d 1055, 1060 (10th Cir. 2009) (citation omitted). Even when a proffered jury instruction properly states the law, a district court does not abuse its discretion by rejecting the instruction so long as "the material issues in the case have been comprehensively and correctly covered in the general instructions." Id. at 1060-61 (internal quotation marks and citations omitted).

We agree with Defendants that the submitted jury instructions "comprehensively and correctly" covered the elements of the excessive-force claim. Id. at 1060-61. Instruction number 11 makes clear that the relevant inquiry is whether, under all the circumstances, the officer's use of force was reasonable. See Aplt. App. 41. The instructions are not confusing—nothing suggests that the officers' adherence to their standard operating procedures automatically renders their actions reasonable under the Fourth Amendment. Accordingly, while Mr. Henry's proffered

- 15 -

instruction may have been correct, we cannot say the district court abused its discretion in refusing to submit it to the jury.  <u>See</u> <u>Sherouse</u>, 573 F.3d at 1061.

AFFIRMED.