FILED
United States Court of Appeals
Tenth Circuit

July 5, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PAMELA J. STONEY,

        Plaintiff - Appellant,

v.

CINGULAR WIRELESS LLC, a
Delaware corporation,

        Defendant - Appellee.

No. 10-1506
(D.C. No. 1:06-CV-02003-TJM-KLM)
D. Colorado

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

## I.    Introduction

Pamela Stoney alleged Cingular Wireless ("AT&T")[1] wrongfully

terminated her in violation of Colorado public policy because she exercised her

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]Stoney was originally employed by AT&T Wireless Services, Inc. After Stoney's termination, AT&T Wireless Services, Inc. was acquired by Cingular Wireless, LLC. Cingular Wireless, LLC subsequently changed its name to AT&T Mobility, LLC. Throughout this opinion, this court will refer to Cingular Wireless, LLC, the named defendant in this case, as AT&T.

rights under the Colorado Wage Claim Act to be paid properly and to ensure her sales representatives were paid properly. AT&T asserted Stoney was terminated because she sent a grossly inflammatory and insubordinate email to her supervisor and included her peers and subordinates on the email. Following a five day trial, a jury returned a verdict for AT&T. Stoney appealed, arguing the district court erred in instructing the jury regarding what constitutes protected activity under Colorado law. She also argued the district court abused its discretion by refusing to instruct the jury that an employer may not provoke an employee then rely on the employee's intemperate response as a ground for terminating the employee. We hold that any error in the instruction regarding the scope of activity protected under Colorado law was harmless. We also hold the district court did not abuse its discretion by rejecting Stoney's proposed intemperate-response instruction. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court therefore **affirms** the judgment entered on the jury's verdict.

## II.   Background

Stoney worked for AT&T as a sales manager. Stoney and the sales representatives she supervised were assigned monthly sales quotas. Part of Stoney's compensation, and that of her sales representatives, was based on how much of the total monthly quota was met. For example, sales representatives who exceeded their quotas were paid bonuses or commissions, as was Stoney.

Stoney claimed the sales quotas assigned to her and to her sales representatives dramatically increased mid-month in June 2004. Specifically, she claimed she received one set of quotas on or before June 15, 2004, which she distributed to her sales representatives on June 15, 2004. She claimed she then received a set of much higher sales quotas on June 21, 2004, which she distributed on June 22, 2004. Stoney testified at trial that she was concerned the "sudden, dramatic increase in sales quotas" would cause her sales representatives' pay to be "dramatically reduced" and could also result in her sales representatives being reprimanded if they did not meet their quotas. Thus, Stoney complained to her supervisor about the alleged mid-month increase in sales quotas.

AT&T disputed Stoney's claim the sales quotas were increased mid-month in June 2004. It asserted the sales quotas were sent to Stoney on June 2, 2004, and did not increase after that date. AT&T also claimed Stoney's failure to distribute accurate June sales quotas to her sales representatives at the beginning of the month was a serious violation of her fundamental responsibilities as a sales manager. Stoney claimed she delayed in sending the quotas until June 15, 2004, because she believed the quotas she had received were inaccurate.

Around the same time, AT&T asked its sales managers to complete a project known as the Reconciliation Project as part of AT&T's efforts to correct problems with its sales tracking system. AT&T claimed Stoney failed to fully

complete the Reconciliation Project and, therefore, Stoney's supervisor had to step in and complete the majority of the project. Stoney disputed this.

Stoney testified that during a telephone call one evening in early July 2004, her supervisor "went into a tirade" and screamed at her over the telephone for more than two hours. Stoney also testified her supervisor repeated that behavior in a second, shorter phone call the next morning. AT&T claimed the phone calls were related to the Reconciliation Project.

Around 11:00 p.m. on July 7, 2004, Stoney received an email from her supervisor, attached to which was a Performance Improvement Plan ("PIP"). In the PIP, AT&T accused Stoney of, among other things, failing to distribute sales quotas to her sales representatives in a timely fashion and failing to adequately complete the Reconciliation Project. The PIP's stated purpose was to identify Stoney's performance-related problems and implement a remedial plan. Stoney, however, claimed she believed the PIP meant she was about to be terminated. She testified that after receiving the PIP she became "very upset," was "shocked," "panicked," and "felt painted into a corner."

Approximately fifteen minutes after receiving the email from her supervisor containing the PIP, Stoney replied to that email and copied a member of AT&T's human resources department, several of her fellow sales managers and her subordinate sales representatives. In the email, Stoney claimed her supervisor had "held [her] hostage on the phone for 3 hours last evening and, again, 45

-4-

minutes this morning," accused her supervisor of "harassment and abuse," and claimed the supervisor had made trumped-up charges of performance issues. AT&T terminated Stoney effective July 12, 2004.

Stoney filed a complaint against AT&T alleging, among other things, that AT&T wrongfully terminated her in violation of Colorado public policy because she exercised her right to be paid properly and to ensure her sales representatives were paid properly. AT&T maintained Stoney was terminated for sending an "inflammatory and insubordinate" email to her supervisor and a large group of coworkers and subordinates.

Stoney's case was tried to a jury in May 2010. At trial, the district court instructed the jury on the elements of Stoney's wrongful discharge claim: (1) Stoney was employed by AT&T; (2) AT&T discharged Stoney; (3) Stoney engaged in activity protected under the public policy of the state of Colorado; and (4) AT&T discharged Stoney because she engaged in protected activity.

With respect to the third element of Stoney's claim, the court further instructed the jury as follows:

> On the third element, plaintiff must establish that she engaged in activity protected by the public policy of the state of Colorado. The public policy of the state of Colorado protects employees who complain that employees are not being paid for wages and compensation that is earned, vested, and determinable. This includes complaints about the payment for base salary, commissions, and bonuses that have been earned for past work.

Complaints about general aspects of an employee's job and the requirements that an employer puts upon its employees are insufficient to implicate the public policy of the state of Colorado. In this regard, plaintiff's complaints related to the PIP that she was put on, the quotas assigned to her and her team, not being involved in the appeals process or other issues related to the terms and conditions of plaintiff's employment do not constitute protected activity.

Stoney objected to this instruction, arguing it did not correctly state the law.

The district court also refused Stoney's request for a proposed intemperate-response instruction, which provided: "An employer may not provoke an employee and then rely on the employee's intemperate response as a ground for terminating that person's employment."

The jury returned a verdict for AT&T. Stoney filed a motion for a new trial, which the district court denied. On appeal, Stoney argues the district court erred in instructing the jury regarding the scope of activity protected under Colorado law. She also argues the district court abused its discretion by refusing to give her intemperate-response instruction.

III. Analysis

A. Protected Activity Instruction

Stoney first argues the district court erred in instructing the jury regarding the scope of activity protected by the public policy of the state of Colorado. "We review de novo whether the jury was misled on the applicable law." *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009). The instruction need not be faultless in every respect. *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir.

-6-

1993).  "Only where the reviewing court has substantial doubt that the jury was fairly guided will the judgment be disturbed."  *Id.*  Furthermore, "[a]n erroneous jury instruction requires reversal . . . only if the error is determined to have been prejudicial, based on a review of the record as a whole."  *Sherouse*, 573 F.3d at 1059 (quotation omitted).  If "the erroneous instruction could not have changed the result of the case" the error is harmless and does not require reversal.  *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1158 (10th Cir. 2008) (quotation omitted); *see also Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) ("Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed if the jury might have based its verdict on the erroneously given instruction . . . even if that possibility is very unlikely." (quotations, citation, and alterations omitted)).[2]

Stoney first challenges the instruction that her "complaints related to . . . the quotas assigned to her and her team . . . do not constitute protected activity."

---

[2]We note it is not clear whether an instructional error is considered harmless only if the instruction could not have changed the result of the case as the cited precedents suggest, or whether it is considered harmless if "the verdict more probably than not was untainted by the error" as other precedents suggest. *See, e.g.*, *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1252-53 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1233 (10th Cir. 2000) (acknowledging this court's "conflicting precedent regarding the precise standard for reversal due to erroneous instructions").  We need not decide which of these standards controls, however, because both parties assert the standard announced in *Level 3 Communications, LLC,* applies, and even applying that higher standard, reversal is not warranted.

She argues her complaints about the alleged mid-month increase in quotas concerned, at least in part, bonuses or commissions earned for sales already made, i.e., bonuses or commissions earned for past work. Thus, she argues, her complaints about the alleged mid-month increase in quotas constituted protected activity and the instruction was erroneous because it misled the jury into believing her complaints about quotas did not constitute protected activity. We agree that if Stoney's complaints about the alleged mid-month increase in quotas concerned, at least in part, bonuses or commissions earned for past work, they likely constituted protected activity and the challenged instruction may have misled the jury. Stoney, however, failed to present any evidence her complaints about the alleged mid-month increase in quotas actually concerned bonuses or commissions earned for past work. For example, she presented no evidence regarding the number of sales made by any employee in June 2004, much less the number of sales made as of June 21, 2004, the date of the alleged increase. Nor did she present evidence establishing when bonuses or commissions are considered earned by an employee under AT&T's quota program. The evidence she presented amounted to mere speculation that the alleged mid-month increase in quotas may result in employees receiving reduced bonuses or commissions. Stoney does not point to, and this court is unable to find, any evidence that any employee's bonus or commission already earned was actually affected as a result

of the alleged mid-month increase in quotas.  Thus, the instruction could not have changed the result of the case, and any error was harmless.

Stoney next argues the public policy of Colorado protects employee conduct as long as the employee has a reasonable belief the employer's conduct is unlawful or otherwise violates public policy, even if the employer's conduct is not actually unlawful and does not actually violate public policy.  She argues she was therefore not required to present evidence the alleged mid-month increase in quotas actually reduced or would actually reduce any employee's bonus or commission earned for past work to prevail on her claim.  Instead, she asserts, she was merely required to present evidence she complained about the alleged mid-month increase in quotas in the reasonable belief that the increase actually reduced or would actually reduce an employee's bonus or commission earned for past work.  Thus, she argues, the instruction misled the jury regarding her burden of proof.  We decline to consider this argument because Stoney failed to raise it prior to or at trial.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below."); *FDIC v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999) ("[W]hen a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review.").

Finally, Stoney challenges the portion of the instruction stating the public policy of Colorado "protects employees who complain that employees are not being paid for wages and compensation that is earned, vested and determinable. This includes complaints about the payment for base salary, commissions and bonuses that have been earned for past work." She argues this instruction implies that the public policy of Colorado protects complaints about wages and compensation, including bonuses and commissions, only if earned, vested, and determinable. She asserts the plain language of the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101–123, makes clear that complaints about bonuses or commissions constitute protected activity even if the bonuses or commissions are not yet vested and determinable. Furthermore, Stoney claims, a Colorado district court case indicates that complaints about bonuses or commissions constitute protected activity even if the bonuses or commissions are not yet earned. *See Boeser v. Sharp*, No. CIVA03CV00031WDMMEH, 2006 WL 898126, at *5 (D. Colo. Mar. 31, 2006). She argues the instruction was therefore erroneous because it misled the jury on the applicable law. We disagree. The Colorado Wage Claim Act, upon which Stoney's wrongful discharge claim is predicated, states in relevant part:

(8)(a) "Wages" or "compensation" means:

(I) All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the

same . . . . *No amount is considered to be wages or compensation until such amount is earned, vested, and determinable*, at which time such amount shall be payable to the employee pursuant to this article.

(II) *Bonuses or commissions earned for labor or services performed* in accordance with the terms of any agreement between an employer and employee[.]

Colo. Rev. Stat. § 8-4-101(8)(a) (emphasis added). The challenged instruction states that complaints about "wages and compensation that is earned, vested, and determinable" are protected by the public policy of Colorado, including "complaints about the payment for . . . commissions, and bonuses that have been earned for past work." Because the instruction mirrors the language of the statute on which Stoney's claim is based we do not have substantial doubt the jury was fairly guided regarding the applicable law. In addition, *Boeser* does not support the proposition that the public policy of Colorado protects complaints about bonuses or commissions even if they are not yet earned. Even if it did, such a conclusion would be contrary to the plain language of the Colorado Wage Claim Act, which requires all wages and compensation, including bonuses and commissions, to be earned.

## B.    Intemperate-Response Instruction

Stoney argues the district court abused its discretion by refusing to instruct the jury that "[a]n employer may not provoke an employee and then rely on the employee's intemperate response as a ground for terminating that person's employment." She asserts this refusal was error because the other instructions did

-11-

not establish a sound basis for her argument that she was provoked into sending the July 7, 2004, email when her supervisor "scream[ed] at her over the telephone twice, for extended periods of time" and then sent the PIP to her "late at night . . . without providing any counseling to her before doing so." This court reviews the district court's decision to deny a request for a particular jury instruction for abuse of discretion. *Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir. 2009). "As long as the charge as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." *Id.* (quotation omitted). Indeed, "a party is not entitled to a specific jury instruction on every correct proposition of law. When the other instructions establish a sound basis for an argument by the party to the jury on that proposition, an additional instruction is not essential and runs the risk of suggesting that the trial judge has adopted the party's view." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1023 (10th Cir. 2004).

In support of her argument, Stoney relies on cases analyzing whether an employee's rights under the National Labor Relations Act have been violated. *See Precision Window Mfg., Inc. v. NLRB*, 963 F.2d 1105, 1108 (8th Cir. 1992) (stating that an employer may not provoke an employee and then rely on the employee's intemperate response as a ground for terminating or refusing to reinstate the employee in violation of the National Labor Relations Act); *Trustees of Boston Univ. v. NLRB*, 548 F.2d 391, 393 (1st Cir. 1977) (same); *NLRB v. M & B Headwear Co.*, 349 F.2d 170, 174 (4th Cir. 1965) (same). Stoney also relies on

-12-

a Colorado Court of Appeals decision holding that an employee could not be denied unemployment benefits for defending himself against an unprovoked physical assault by a coworker. *Escamilla v. Indus. Comm'n of Colo.*, 670 P.2d 815, 816 (Colo. App. 1983). In her reply brief, Stoney cites several more cases, none of which are on point legally or factually, for her position "the law either punishes the behavior of those who provoke an intemperate response, or it excuses or reduces the impact of an intemperate response that was provoked by the target of that response." Stoney does not point to a single case suggesting that her proposed intemperate response instruction is appropriate in the context of this case involving a claim of wrongful discharge in violation of the public policy of Colorado. Thus, she fails to convince us the district court abused its discretion by refusing to give her proposed intemperate-response instruction.

In addition, at Stoney's request, the district court gave a lengthy instruction on pretext, stating, among other things, that: "Plaintiff claims that defendant's assertion of reason for her discharge was a mere pretext to cover up the unlawful motive" and "you must decide . . . whether plaintiff has established that defendant's reason was a pretext to discharge plaintiff because she engaged in protected activity." The court also instructed the jury to "consider any statement made or act done or omitted by the plaintiff or the defendant and all other facts and circumstances in evidence which indicate state of mind and which show whether or not defendants acted intentionally and not by accident." This

-13-

instruction on pretext established a sound basis for Stoney's argument that her supervisor provoked her into sending the July 7, 2004, email. Thus, even assuming Stoney's proposed intemperate-response instruction is a correct proposition of law, it was not essential.

## IV.    Conclusion

For the foregoing reasons, this court **affirms** the judgment entered on the jury's verdict.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-14-