**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHANYA CROWELL,

Plaintiff-Appellant,

v.

DENVER HEALTH AND HOSPITAL
AUTHORITY,

Defendant-Appellee.

No. 13-1355
(D.C. No. 1:12-CV-00019-JLK-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

Shanya Crowell appeals from the district court's grant of judgment as a matter

of law under Fed. R. Civ. P. 50(a) on her Family and Medical Leave Act ("FMLA")

claim under 29 U.S.C. § 2615(a)(1), and Americans with Disabilities Act ("ADA")

claim under 42 U.S.C. § 12112(b)(5)(A). Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

Crowell began working as a paramedic dispatcher for defendant Denver Health and Hospital Authority ("Denver Health") in March 2008.  Her duties in that position included, among other things, directly handling 911 medical calls and dispatching ambulances to the scene of emergency.  In February 2011, Crowell was involved in a motor vehicle accident, and injured her right shoulder.  She was absent from work for two days due to her injuries.  She received treatment for her injuries from Jerry Cupps, D.O., who diagnosed her with a torn tendon that would require surgery.  Crowell did not, however, have surgery.  In the months following the accident, Crowell experienced pain in her neck and lower back, and a burning sensation in her right arm.  Crowell, nevertheless, worked through the pain.

During her shift on June 5-6, 2011, Crowell experienced severe chest pain, and was evaluated by Denver Health paramedics.  The paramedics were concerned with the chest pain and thought that Crowell might have been suffering from a pulmonary embolism.  They suggested that she seek further evaluation.  At the time of the incident, Crowell had twice violated Denver Health's attendance policy, and a third violation would subject her to termination.  Although Crowell was concerned about leaving her shift early, she decided to go to a hospital emergency room for further evaluation.  Crowell did not have a pulmonary embolism.

Crowell reported to work for her next shift and a supervisor advised her that if she was interested in or needed FMLA leave for the June 5-6 absence, that she should

speak with the appropriate personnel.[1]  Although Denver Health initially granted

Crowell FMLA-approved continuous leave for one month from June 17, 2011, to

July 17, 2011, it later determined that continuous leave was not necessary until after

Crowell had surgery on her shoulder.  It also determined that intermittent leave was

not necessary, and that all absences were subject to Denver Health's attendance

policy.  Accordingly, Crowell's June 5-6 absence was not an approved leave of

absence and constituted her sixth occurrence in violation of Denver Health's

attendance policy prohibiting six occurrences in a twelve month period.[2]  Denver

Health terminated Crowell effective July 6, 2011.

In 2012, Crowell sued Denver Health, asserting an FMLA interference claim

and an ADA failure-to-accommodate claim.[3]  She claimed that her June 5-6 absence

was protected under the FMLA and ADA.  Crowell's claims proceeded to trial.  At

the conclusion of Crowell's evidence, Denver Health made an oral Rule 50(a) motion

for judgment as a matter of law due to a lack of sufficient evidence on both claims.

Regarding the FMLA claim, the district court found that Crowell's request was

untimely pursuant to law and Denver Health's Leave of Absence policy ("Policy").

---

[1]  Crowell's shift began on June 5, 2011, and continued over to June 6, 2011. Crowell left her shift early on June 6, 2011, before the shift was completed.

[2]  Denver Health's attendance policy exempted an approved leave of absence from being considered an occurrence of absence.

[3]  Crowell also asserted an FMLA retaliation claim, but this was dismissed on summary judgment.  She is not contesting this claim on appeal.

- 3 -

Regarding the ADA claim, the district court found that there was no evidence that Crowell was disabled. It also found that there was no evidence that (1) there was an unreasonable refusal to make an accommodation, or (2) the proposed accommodation was unreasonable. It granted judgment as a matter of law to Denver Health on both the FMLA claim and the ADA claim.

On appeal, Crowell challenges the district court's grant of judgment as a matter of law on both of her claims.

## II.    Discussion

"We review de novo a district court's decision to grant . . . a Rule 50(a) motion for judgment as a matter of law, applying the same standards as the district court." *Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013). Judgment as a matter of law "is appropriate if, after a party has presented its evidence, the 'court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Henry v. Storey*, 658 F.3d 1235, 1237-38 (10th Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)). Stated differently, it is "appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Elm Ridge*, 721 F.3d at 1216 (internal quotation marks omitted). "We draw all inferences from the evidence in favor of the non-moving party, and do not weigh the evidence or judge witness credibility." *Henry*, 658 F.3d at 1238.

**A. FMLA Claim**

The FMLA entitles qualified employees to take up to twelve weeks of leave during a twelve-month period for any one of several reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[4]  29 U.S.C. § 2612(a)(1)(D).  An FMLA interference claim is based on an employer's denial of an employee's FMLA rights, including a wrongful refusal to grant FMLA leave.  *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); *see also* 29 U.S.C. § 2615(a)(1) (providing that it is "unlawful for any employer to interfere with, restrain, or deny the exercise" of FMLA rights).  It requires that an employee demonstrate by a preponderance of evidence an entitlement to the disputed leave.  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).  To establish an interference claim, Crowell must show: "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights," *Campbell*, 478 F.3d at 1287 (brackets and internal quotation marks omitted).

---

[4]  The term "serious health condition" is defined under the FMLA as an "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.113(a).

### 1.  FMLA Notice

The district court entered judgment as a matter of law on the basis that Crowell's request for FMLA leave was untimely.  Crowell argues that she complied with Denver Health's Policy.

Where, as here, the need for FMLA leave is unforeseeable, the "employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case," 29 C.F.R. § 825.303(a).  It is generally practicable to do so "within the time prescribed by the employer's usual and customary notice requirements applicable to such leave."  *Id*.  Additionally, an employee must comply with the employer's usual and customary notice and procedural requirements if the need for leave is unforeseeable, and failure to do so may result in the delay or denial of FMLA-protected leave.  *Id*. § 825.303(c).  Denver Health's Policy required that for unforeseeable FMLA leave, it should be practicable to provide notice either the same day or the next business day.

In requesting leave, employees need not expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed.  *Id*. § 825.301(b).  "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."  *Satterfield v. Wal-Mart Stores, Inc*., 135 F.3d 973, 977 (5th Cir. 1998) (internal quotation marks omitted).  It is the employer's responsibility to designate leave as FMLA-qualifying, 29 C.F.R. § 825.301(a), but

the employee must explain the reasons for the needed leave and "state a qualifying reason for the needed leave," *id.* § 825.301(b).

The parties dispute whether an email sent by Crowell to her supervisor and to Denver Health's Leave of Absence and ADA coordinator on June 7, 2011, the day after Crowell's emergency room treatment, qualifies as sufficient notice to Denver Health of Crowell's need for FMLA leave. Crowell's email stated as follows:

> Hi, I am in the process of trying to get FMLA in reference to my car accident and the injuries I sustained. I need to know exactly what I need to do and who needs to fill out the paperwork.

App. at 154.

Crowell argues that the email is sufficient, and timely provided Denver Health notice. But the email does not sufficiently connect her June 5-6 absence with a health condition rising to the level of seriousness protected under the FMLA. Indeed, the email does not identify the date of her absence for which Crowell sought leave, identify a specific injury or health condition, explain the reasons for the needed leave, or include any information demonstrating that a health condition renders Crowell unable to work. The content of the email is not so much a request for leave but rather a request for further information. In our view, it lacks important information which would have enabled Denver Health to reasonably determine whether the FMLA may apply. *See* 29 C.F.R. § 825.303(b).

Also, Denver Health's Policy required the submission of a Leave of Absence form. Crowell signed and dated this form on June 17, 2011. Although the district

- 7 -

court did not expressly state so, it appears it construed the Leave of Absence form, and not the June 7 email, as Crowell's notice. It found it ten days late pursuant to FMLA regulations and Denver Health's Policy.[5]

But review of the record demonstrates that Crowell's request for FMLA-protected leave was not denied on the basis of untimely notice. Instead, Denver Health denied the request based on representations made by Crowell's treating provider, Dr. Cupps. We decline to affirm the district court's judgment as a matter of law in favor of Denver Health on grounds of untimeliness. But we do so instead for other reasons. *See Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008) (stating that we may affirm a district court's order "on any basis supported by the record, even though not relied on by the district court" (internal quotation marks omitted)).

## 2. Entitlement to FMLA Leave

As previously stated, leave is qualifying "if (1) it is the result of a 'serious health condition' that (2) 'makes the employee unable to perform the functions' of [her] job." *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998) (quoting § 2612(a)(1)(D)); *see also* 29 C.F.R. § 825.112(a)(4) (providing that serious

---

[5] We presume the district court found it untimely under 29 C.F.R. § 825.303(a), and Denver Health's Policy requiring notice for unforeseeable leave either the same day or the next business day. The Denver Health Policy also provided that leave may be delayed or denied if appropriate notification and certification are not provided in a timely manner. *See* App. at 178.

health conditions are a qualifying reason for FMLA leave). "If either of these elements is not met, the employee is not entitled to FMLA leave" under § 2612(a)(1)(D). *Stoops*, 141 F.3d at 313.

To determine if an employee is so qualified, the FMLA provides that an employer may require that leave requested under § 2612(a)(1)(D) "be supported by a certification issued by [a] health care provider of the eligible employee." *See* 29 U.S.C. § 2613(a); *see also* 29 C.F.R. § 825.305(a). Denver Health's Policy required such certification. The failure to provide the employer with complete and sufficient certification may result in the denial of FMLA leave. *See* 29 C.F.R. § 825.306(e). Where an employer receives a physician's certification that indicates that an employee's serious health condition does not require her to miss work, the employer may rely on that certification until the employee provides a contrary medical opinion. *Stoops*, 141 F.3d at 313.

The evidence at trial demonstrated that there was an initial discrepancy between the leave requested by Crowell and the leave certified by Dr. Cupps. Crowell's Leave of Absence form requested "intermittent leave" from June 6, 2011, to June 5, 2012, for continuing care from the motor vehicle accident. *See* Supp. App. at 122-23, 329-30.[6] On the certification form, however, Dr. Cupps marked the box for "continuous leave," and his handwritten notes indicated one month of leave for

---

[6]     FMLA regulations define "intermittent leave" as "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a).

Crowell's shoulder surgery.[7]  He further marked the box "yes" in response to a question concerning whether the condition would cause episodic flare-ups periodically preventing the employee from performing her job functions.  In response to a subpart of this question requesting information on the frequency of flare-ups and duration of related incapacity, Dr. Cupps wrote: seven times per week, twelve hours per day.  According to Robin Ruschival, Denver Health's leave of absence representative, she interpreted the certification to call for one month of continuous leave based on Dr. Cupps' representations.  Ruschival, therefore, changed the request to "continuous" leave.  *See* Supp. App. at 167.  Based on Dr. Cupps' certification, Denver Health granted Crowell FMLA leave from June 17, 2011, to July 17, 2011.[8]

When Ruschival informed Crowell on July 1, 2011, that she had been approved for continuous leave, Crowell told her that she needed intermittent leave instead.  Ruschival advised Crowell that a new medical certification form would be necessary if intermittent leave was needed, and emailed Crowell on July 1, 2011, with instructions and the necessary forms.

---

[7]  Under the FMLA, leave may be continuous, which is one block of leave of twelve weeks or less.  *See* 29 U.S.C. § 2612(a)(1).

[8]  Ruschival approved the leave from the date of Crowell's signature, June 17, 2011, although she did not receive Crowell's Leave of Absence form until June 30, 2011.  *See* Supp. App. at 166.

- 10 -

On July 5, 2011, Crowell and Dr. Cupps contacted Ruschival and spoke with her by telephone.[9] Ruschival testified that she asked Dr. Cupps if Crowell would need any time off of work before her surgery and he replied, "no," and that the one-month leave would be needed after surgery. Supp. App. at 133. Ruschival admitted that she did not specifically ask Dr. Cupps whether Crowell's emergency room treatment on June 6, 2011, was related to Dr. Cupps' treatment of her. She further testified that she assumed when she asked Dr. Cupps if Crowell would be incapacitated and needed to leave work at any time before her surgery, that this encompassed the June 6, 2011, date. Dr. Cupps testified that he did not recall discussing Crowell's June 6 treatment with Ruschival.

Accordingly, our review of the record does not indicate that Ruschival and Dr. Cupps expressly discussed Crowell's June 6 treatment. But the record also shows that Crowell did not present any evidence that she discussed her June 6 treatment with Dr. Cupps, or that he ever reviewed any emergency room provider notes from the June 6 treatment.

If, in fact, Crowell wanted her June 5-6 absence to be FMLA-approved as part of intermittent leave, there was no medical testimony at trial to support it. Although

---

[9] FMLA regulations permit an employer to contact a health care provider for purposes of authentication and clarification of a medical certification. *See* 29 C.F.R. § 825.307(a). Clarification means obtaining information to understand the handwriting on a certification or to understand the meaning of a response. *Id.* "It is the employee's responsibility to provide the employer with a complete and sufficient certification and to clarify the certification if necessary." *Id.*

not specific to June 5-6, Dr. Cupps' general testimony concerning Crowell's ability to work with pain from her shoulder injury refutes a reasonable inference that intermittent leave was necessary. For example, Dr. Cupps agreed that Crowell never told him that she needed to be off of work for a few hours due to pain. He opined that if Crowell did suffer from a flare-up of pain, he was "sure she could work through it because she had before." *Id*. at 223. Dr. Cupps did not think that Crowell, with her type of job duties in a sedentary position, would be incapacitated or unable to work due to her pain. Nor did he think that restrictions for her type of work were necessary. In sum, he did not think it was medically necessary for Crowell to be off of work because of her pain. *See* 29 U.S.C. § 2612(b)(1) (allowing intermittent leave for a qualifying (a)(1)(D) health condition "when medically necessary").[10]

Importantly, also absent from the record is a medical certification supporting that Crowell was unable to perform the functions of her job during her June 5-6 shift due to a serious health condition. *See id*. § 2613(a). Ruschival testified that she explained to Crowell in the July 1 telephone conversation that she would need a different medical certification form if intermittent leave was needed. Ruschival, however, never received a different medical certification from Dr. Cupps, or any

---

[10]     Dr. Cupps also testified concerning his responses on the medical certification regarding Crowell's flare-ups. He explained that he wrote she could have flare-ups seven times per week, twelve hours per day because he did not know or could not predict what days it might be a problem. He further agreed that the flare-ups would be on an unpredictable basis and for an unpredictable duration, but he did not think that she would be incapacitated because of this pain. *See* Supp. App. at 223.

- 12 -

other of Crowell's medical providers.  And Crowell testified that she did not know why she did not prepare an amended certification.  Accordingly, Crowell failed to present evidence at trial that an amended medical certification supported her inability to perform her job during her June 5-6 shift due to a serious health condition. *See, e.g., Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (FMLA leave appropriately denied where employee failed to provide documentation supporting request for leave).[11]

Additionally, Crowell premised her FMLA claim on continuing treatment for a "chronic condition," which under FMLA regulations is a type of "serious health condition."  *See* 29 C.F.R. § 825.115(c).[12]  For chronic conditions, the FMLA protects leave for "[a]ny period of incapacity or treatment for such incapacity *due to a chronic serious health condition*."  *Id*. (emphasis added).  "Incapacity" is defined as "inability to work . . . due to the serious health condition, treatment therefore, or recovery therefrom."  *Id*. § 825.113(b).

---

[11]    Although Crowell argues on appeal that she did not have time to submit an amended medical certification before she was terminated, she provided no evidence at trial that she was, for whatever reason, unable to submit the necessary forms.

[12]    A "chronic serious health condition is one which:  (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider; (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)."  29 C.F.R. § 825.115(c).

But even assuming that Crowell's trip to the emergency room on June 6 qualifies as treatment for an inability to work or an "incapacity," she did not present sufficient evidence that her treatment was due to a chronic serious health condition – i.e., that her severe chest pain on June 5-6 was related to the shoulder injury she claims is a "chronic condition." Crowell testified that instead of a pulmonary embolism, she was told that it was "just pain from my injuries." *See* App. at 93. And Dr. Cupps testified that pain in the upper chest on either side could involve the shoulder muscle. *See* Supp. App. at 218. In response to whether this was consistent with Crowell's injuries, Dr. Cupps testified only that it "could be." *Id*. There was no evidence at trial from Dr. Cupps or another medical provider definitively linking Crowell's severe pain on June 5-6 with her shoulder injury.

Nor was there evidence, as is required to establish a "chronic condition," that there were recurring episodes of severe chest pain caused by the underlying shoulder injury or episodic periods of incapacity. *See* 29 C.F.R. § 825.115(c)(2), (3).

Given the absence of medical documentation supporting her request for intermittent leave covering the June 5-6 absence and evidence showing that Crowell has a "chronic condition" that prevented her from performing the functions of her job, we conclude that there is no legally sufficient evidentiary basis for a jury to find that Crowell was entitled to FMLA leave. Accordingly, judgment as a matter of law in favor of Denver Health on the FMLA interference claim was appropriate.

**B. ADA**

The ADA prohibits discrimination against disabled individuals. 42 U.S.C. § 12112(a). Discrimination under the ADA includes an "employer's not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id*. § 12112(b)(5)(A). To establish her failure-to-accommodate claim, Crowell must show that: "(1) she is a disabled person within the meaning of the ADA; (2) she is able to perform the essential job functions with or without reasonable accommodation; and (3) [defendant] discriminated against her because of her disability." *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004).

The district court determined that Crowell was not disabled within the meaning of the ADA. Crowell argues that she presented sufficient evidence that she is disabled.

A person is "disabled" under the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (internal quotation marks omitted). Crowell asserted that her impairments to her arm and back substantially limited her abilities to lift, sit, and walk. Whether the first two

- 15 -

requirements have been met are questions of law for the court, but whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury. *Id*.

The district court did not make express findings on the first two requirements. But even assuming Crowell could establish an impairment and a major life activity, *see* 29 C.F.R. § 1630.2(h) (defining physical impairment) and 42 U.S.C. § 12102(2)(A) (providing that lifting and walking are major life activities), Crowell must also establish that her physical impairments substantially limit her major life activities of lifting, sitting, and walking.

In 2008, Congress passed the ADA Amendments Act of 2008 ("ADAAA") which provided for a broader construction of the definition of disability. *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage . . . to the maximum extent permitted by the terms of this chapter."). In turn, EEOC regulations now provide that the term "substantially limits" is to be construed broadly in favor of coverage and is not meant to be a demanding standard. *See* 29 C.F.R. § 1630.2(j)(1)(i).

But even under a less demanding standard, Crowell's claim fails. Crowell offered limited testimony concerning her abilities to lift, sit, and walk. And with respect to lifting and walking, some of her testimony was unclear concerning whether she was testifying as to her abilities to lift and walk as of the time she alleges she should have been reasonably accommodated, which she must do. *See, e.g., Carter*,

662 F.3d at 1142 (providing that employee must show that he was disabled under the ADA at the time of being fired).  For example, at trial Crowell's attorney read from an April 2011 treatment record stating that Crowell's pain symptoms were exacerbated by lifting.  Crowell testified that her pain symptoms would cause her to drop groceries, and she could not reach for overhead items.  She also testified that she could lift "[m]aybe five pounds."  Supp. App. at 252.  In terms of walking, she testified that she could walk "about a hundred or so feet" without pain, *id*. at 253, and indicated how far she walked from her parking spot on the day of trial.  Such testimony does not adequately link Crowell's alleged inabilities to lift and walk as of the time she alleges she should have been reasonably accommodated.

Further, Crowell was required to show that she was substantially limited in her ability to perform a major life activity "as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  Crowell failed to do this as the record does not reflect evidence concerning her alleged limitations in comparison to the general population.  *See Albert*, 356 F.3d at 1251 (noting that while it is "insufficient for individuals attempting to provide disability status to merely submit evidence of a medical diagnosis," they may show that the impacted activity "is different from that of an average individual" (ellipsis and internal quotation marks omitted)).  And where there was a comparison, her treating physician, Dr. Cupps, testified that in terms of sitting, if Crowell needed to switch positions after sitting for an hour or two, that this was similar to people who have not been injured.  *See* Supp. App. at 224.

- 17 -

Dr. Cupps' testimony also minimizes a reasonable inference that Crowell's activities of lifting, sitting, and walking were substantially limited. He testified that although Crowell could not lift heavy objects, this would not prevent her from working in a typical office setting. And as discussed above, Dr. Cupps testified that if Crowell was sitting for a long period of time and experienced discomfort, she could switch positions. Dr. Cupps also testified that Crowell could walk without swinging her arms and would feel reasonably well. Crowell herself testified that her allegedly impacted abilities to lift, sit, and walk did not prevent her from performing her job duties. *See* Supp. App. at 341.

In short, we conclude that this evidence does not create a reasonable inference that Crowell was substantially limited in her abilities to lift, sit, and walk. Accordingly, we agree that there is not a legally sufficient evidentiary basis for a jury to conclude that Crowell is disabled within the meaning of the ADA.

Furthermore, the accommodation Crowell requested is unreasonable as a matter of law. Crowell testified that she wanted the ability to leave work during her flare-ups "whenever the pain or the numbness occurred to the point that [she] could not type," *id*. at 342. She was unable to testify to the length of time she would need off for a flare-up or how often they would occur. *See id*. Although the ADA provides for part-time or modified work schedules as a reasonable accommodation, 42 U.S.C. § 12111(9)(B), an unpredictable, flexible schedule that would permit Crowell to leave work whenever she has a medical episode is unreasonable as a

matter of law, *see Waggoner v. Olin Corp*., 169 F.3d 481, 485 (7th Cir. 1999);

*see also Carter*, 662 F.3d at 1146-47 (noting that regular attendance is an essential

function of some jobs). Judgment as a matter of law in favor of Denver Health on the

ADA claim was appropriate.

### III.    Conclusion

The judgment of the district court is affirmed.


Entered for the Court


Wade Brorby
Senior Circuit Judge